CARLOS CINTRÓN JÁCOME ET AL., recurridos *v.* GENERAL EMILIO DÍAZ COLÓN, peticionario.

*Número:* CC-2001-868        *Resuelto:* 24 de abril de 2003

*Roberto J. Sánchez Ramos*, procurador general y *Leticia Casalduc Rabell*, procuradora general auxiliar, representantes de la parte peticionaria; *Iván Crespo Arroyo* y *Arnaldo Irizarry Irizarry*, abogados de la parte recurrida.

El Juez Asociado Señor Fuster Berlingeri emitió la opinión del Tribunal.

Nos toca decidir si los tribunales del Estado Libre Asociado de Puerto Rico (E.L.A.) tienen jurisdicción para entender en una acción de restitución al empleo y de daños y perjuicios por despido discriminatorio, incoada por un trabajador de la Guardia Nacional de Puerto Rico en contra de su patrono y el E.L.A., respectivamente.

I

Carlos Cintrón Jácome (en adelante Cintrón) se desempeñaba como técnico de equipo pesado (*heavy machinery technician*) para la Guardia Nacional de Puerto Rico. El 19 de agosto de 1996 el patrono le notificó a Cintrón que se proponía tomar una acción disciplinaria en su contra por haber participado alegadamente en la desaparición de un vehículo de la Guardia Nacional. Se le formularon cargos a Cintrón por haber mutilado y haber hecho uso indebido de dicha propiedad, y por haber emitido declaraciones juradas falsas sobre el particular. Luego de brindársele oportunidad para contestar las referidas imputaciones por escrito, el 18 de noviembre de 1996 la Guardia Nacional le notificó a Cintrón su despido del puesto que ocupaba allí, efectivo el 8 de enero de 1997, y se le advirtió sobre su derecho a apelar ante el Ayudante General de dicho cuerpo.

El 25 de agosto de 1997 Cintrón presentó la demanda que aquí nos concierne contra el Ayudante General de la Guardia Nacional, el General Emilio González, y el Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia, Sala Superior de Ponce. En esencia, en ella alegó que se desempeñaba como empleado regular y de carrera, realizando tareas de civil en la Guardia Nacional de

Puerto Rico; que había sido despedido de su puesto sin que se explicaran las razones de dicho despido; que las acciones de la parte demandada violentaban lo dispuesto en el acuerdo obrero-patronal que regía la conducta entre el patrono y los empleados; que la actuación de los codemandados era nula e ilegal por ser contraria a la Ley Orgánica de la Guardia Nacional, 25 L.P.R.A. sec. 2051 *et seq.*, y a la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1301 *et seq.*; que las actuaciones ilegales y negligentes de los codemandados eran inconstitucionales debido a que había sido despedido por motivaciones político-partidistas por ser miembro del Partido Popular Democrático mientras que el Ayudante General de la Guardia Nacional era miembro del Partido Nuevo Progresista.

Cintrón solicitó al foro de instancia que declarara que su despido había sido ilegal y en violación de sus derechos constitucionales, que ordenara su inmediata restitución al puesto que ocupaba y que prohibiera a los codemandados y a sus sucesores interferir con el goce y disfrute de su empleo. También solicitó que se le indemnizara a él y a su familia codemandante por los daños sufridos como consecuencia del referido despido. En apoyo de su reclamo, Cintrón alegó que la Guardia Nacional lo había usado como chivo expiatorio y que su despido se había realizado sin celebrar la vista administrativa a que tenía derecho. Alegó, además, que intentar agotar los remedios administrativos hubiera sido inefectivo y no proveería un remedio adecuado al agravio planteado.

El 11 de agosto de 1998 los demandados solicitaron al tribunal de instancia que dictara una sentencia sumaria a su favor. Alegaron que dicho foro carecía de jurisdicción sobre la materia, que no se habían agotado los remedios administrativos, que no se había planteado una causa de acción que ameritara un remedio y que faltaba una parte indispensable. Alegaron también que Cintrón era un empleado federal, por lo que no tenía a su alcance la acción

civil que había entablado, y que el Gobierno de Estados Unidos tenía que ser traído al pleito. Cintrón se opuso a dicha solicitud el 6 de abril de 1999. Alegó que la Guardia Nacional de Puerto Rico lo había despedido sin consultar al Gobierno federal, y que él era un empleado del E.L.A. En cuanto al agotamiento de remedios administrativos, adujo que había solicitado una vista administrativa el 4 de junio de 1997 pero no se le había concedido. Solicitó que no se concediera la sentencia sumaria porque su condición de empleado estatal o federal estaba en controversia, lo cual requería una vista evidenciaria.

El 26 de agosto de 1999 el E.L.A. sometió una moción en apoyo a su solicitud de sentencia sumaria, con la que acompañó una declaración jurada de Benjamín Colón Lara, Oficial Ejecutivo de Asuntos Estatales de la Guardia Nacional, mediante la cual el declarante aseguraba que el puesto de Cintrón respondía directamente al Gobierno federal, quien era custodio exclusivo de su expediente. Acompañó también una copia del formulario 50–B de la Oficina Federal de Administración de Personal, titulado *Notification of Personnel Action*, que describía el puesto de Cintrón como *Heavy Mobile Equipment Repairer* e indicaba que el departamento o agencia empleadora era el Departamento del Ejército.

El 15 de diciembre de 1999 el tribunal de instancia dictó una sentencia sumaria a favor de los demandados. Determinó que los promoventes habían probado que Cintrón era un empleado federal y que éste no había presentado evidencia de lo contrario. Además, resolvió que carecía de jurisdicción sobre la materia porque la facultad del Ayudante General de la Guardia Nacional de Puerto Rico para contratar y despedir a Cintrón había emanado de normas federales.

Cintrón solicitó la reconsideración del dictamen referido, la cual fue denegada el 21 de enero de 2000. Cintrón entonces apeló la sentencia ante el Tribunal de Circuito de

Apelaciones. El 29 de junio de 2001 dicho tribunal revocó el dictamen del foro de instancia y le devolvió el caso para que continuaran los procedimientos allí. Resolvió que el caso de autos trataba de una acción de daños por despido injustificado y discriminatorio, sobre la cual los tribunales de Puerto Rico tenían jurisdicción, independientemente de que Cintrón fuese un empleado federal y de que aplicaran al caso tanto leyes como jurisprudencia federal.

El 29 de octubre de 2001, luego que se denegara su solicitud de reconsideración, el E.L.A. recurrió de dicha determinación ante nos, señalando que el Tribunal de Circuito de Apelaciones había errado al contravenir una alegada doctrina federal que prohíbe las causas de acción contra oficiales militares que surjan en el curso del servicio militar.

El 14 de diciembre de 2001 expedimos el recurso de *certiorari* solicitado por el E.L.A. para revisar la sentencia emitida por el foro apelativo el 29 de junio de 2001. Luego de concedérseles sendas prórrogas, el Procurador General sometió su alegato el 11 de abril de 2002 y la parte recurrida sometió el suyo el 17 de julio de 2002. Pasamos a resolver.

## II

En su alegato ante nos el E.L.A. ha admitido que los tribunales de Puerto Rico tienen jurisdicción sobre las controversias que se plantean al amparo de leyes federales, pero toma excepción en cuanto a aquellas surgidas específicamente bajo las leyes de administración de personal militar al aducir que el personal militar carece totalmente de alguna causa de acción en contra de un superior. El Procurador General, representando al Estado, ha argumentado que el aspecto militar del puesto de Cintrón era inseparable del aspecto civil porque se le consideraba un integrante del departamento militar correspondiente y estaba sujeto a

sus reglamentos. Adujo, además, que empleados como Cintrón no tienen una causa de acción contra oficiales militares por incidentes que surjan en el curso del servicio militar, aun cuando el reclamante invoque una violación a sus derechos civiles. Alegó, por ende, que en el caso de autos los tribunales de Puerto Rico carecen de jurisdicción para adjudicar la acción de los demandantes.

No tiene razón el E.L.A. Veamos.

## A.  *La jurisdicción concurrente*

Como se sabe, el principio fundamental que rige lo relativo al poder de los foros judiciales para resolver las cuestiones federales es el de la *jurisdicción concurrente.* Los tribunales federales y los estatales de ordinario tienen jurisdicción concurrente para entender en las controversias sobre derecho federal. *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990); *Golf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981). Así lo hemos reconocido claramente antes. *Roberts v. U.S.O. Council of P.R.*, 145 D.P.R. 58, 69 (1998).

De acuerdo con el referido principio, los tribunales estatales, incluso los de Puerto Rico, carecen de jurisdicción sobre algún asunto federal *únicamente* cuando la exclusividad de la jurisdicción federal sobre tal asunto ha sido dispuesta *expresamente* por el Congreso de Estado Unidos, o cuando ha sido declarada así por el Tribunal Supremo de Estados Unidos en situaciones en que la intención del Congreso de privar a los tribunales estatales de jurisdicción sobre dicho asunto federal es *palmariamente clara.* Véase 13 *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction 2d* Sec. 3527 (1984). La jurisdicción federal exclusiva es un asunto en extremo excepcional.

En el caso de autos es claro que el Congreso de Estados Unidos *no ha dispuesto* que reclamaciones como la que aquí nos concierne de personas empleadas por la Guardia

Nacional estén excluidas de la jurisdicción de los tribunales estatales. No hay legislación federal a tales efectos. Más aún, es patente también que el Tribunal Supremo de Estados Unidos *no ha resuelto* que el tipo de acción que aquí nos concierne esté excluida de la jurisdicción de los tribunales estatales.

El máximo foro judicial federal se ha expresado en varias ocasiones en que *soldados de las fuerzas armadas de Estados Unidos* demandaron a sus *superiores militares* en acciones federales de daños y perjuicios conocidas como *Bivens actions*. Se trata de acciones civiles para reclamar una indemnización del Gobierno de Estados Unidos por los daños ocasionados por funcionarios federales, que se incoa directamente al amparo de la propia Constitución federal, conforme a lo resuelto en *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). En los casos aludidos, el Tribunal Supremo de Estados Unidos coincidió en que las acciones tipo *Bivens* no son procedentes cuando se trata de reclamaciones monetarias de soldados contra sus superiores militares. Véanse: *United States v. Stanley*, 483 U.S. 669 (1987); *Chappell v. Wallace*, 462 U.S. 296 (1983). Dicho Tribunal también se ha expresado en cuanto a la improcedencia de acciones civiles federales incoadas por soldados de las fuerzas armadas de Estados Unidos en contra del Gobierno federal al amparo del *Federal Tort Claims Act*, por conducta alegadamente negligente de dichas fuerzas armadas o de militares de alto rango. Véase *Feres v. United States*, 340 U.S. 135 (1950). Pero el Tribunal Supremo federal no se ha expresado en torno a acciones como la que aquí nos concierne, que es esencialmente una reclamación *no de un soldado*, sino de un mero empleado de la Guardia Nacional, *no en contra del gobierno federal*, sino del E.L.A.

Ausente una legislación federal que se ocupe de casos como el de autos, y ausente también alguna decisión del Tribunal Supremo de Estados Unidos que disponga concre-

tamente que en casos como el de autos la jurisdicción federal es exclusiva, es claro que conforme al fundamental principio federal sobre la jurisdicción concurrente, los tribunales de Puerto Rico tienen jurisdicción sobre el presente caso.

■ No puede concluirse que los tribunales de Puerto Rico carecen de jurisdicción sobre el asunto en cuestión, como alega el Procurador General de Puerto Rico en este caso, sólo a base de interpolar distintas opiniones del Tribunal Supremo federal sobre otras materias análogas, por lógica que sea esa interpolación. La doctrina de la jurisdicción concurrente no nos requiere conjeturar sobre lo que hubiese hecho dicho Tribunal de habérsele planteado el caso de autos. Tampoco puede fundamentarse una decisión tan excepcional, como también alega el Procurador General, sólo en el hecho de que la Corte de Apelaciones de Estados Unidos para el Primer Circuito supuestamente haya resuelto un caso análogo del modo que el Estado nos pide que adjudiquemos el de autos. Esta divergencia entre ambas jurisdicciones se debe a que la naturaleza y funciones de ese distinguido foro son distintas de las nuestras, y sus dictámenes no nos obligan.[1]

En resumen, pues, no debe este Tribunal declarar que el poder judicial de Puerto Rico no tiene jurisdicción sobre algún asunto, a menos que sea patentemente claro, cosa que aquí no sucede, puesto que este caso, en lo que aquí nos concierne, trata de un mero empleado de la Guardia Nacional de Puerto Rico que reclama una indemnización del E.L.A.

B. *La acción en el caso de autos*

Es menester precisar también la naturaleza de la acción entablada por Cintrón en el caso de autos. Aunque su demanda aquí dista mucho de tener una redacción adecuada,

---

[1] Véase 28 U.S.C.A. 1258.

un análisis cuidadoso de ésta revela que se trata primordialmente de una acción *estatal,* es decir, una acción al amparo de derechos y remedios que surgen mayormente *del ordenamiento jurídico de Puerto Rico.* Veamos.

Cintrón alegó en su demanda dos hechos medulares, a saber, (1) que fue despedido de su empleo en la Guardia Nacional, y (2) que ese despido le había ocasionado graves daños personales a él y a sus familiares. Cintrón alegó también que el despido había sido ilegal por ser contrario: (1) al convenio colectivo que los empleados de la Guardia Nacional tienen con su patrono; (2) a la Ley de Personal del Servicio Público de Puerto Rico; (3) a la Ley de la Guardia Nacional de Puerto Rico, 25 L.P.R.A. secs. 2051 *et seq.* y 2911 *et seq.,* y (4) a las Constituciones de Puerto Rico y de Estados Unidos.

Con arreglo a lo anterior, Cintrón reclamó en esencia dos remedios, a saber: (1) que se le ordenara a la codemandada Guardia Nacional que lo reinstalara en su empleo y lo mantuviese allí, y (2) que ordenara al Ayudante General y al E.L.A. el pago de los daños y perjuicios que habían sufrido los demandantes.

Como parte de sus alegaciones, Cintrón también solicitó que se declarara inconstitucional la actuación de los codemandados, para lo cual invocó la Regla 59 de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, que trata sobre sentencias declaratorias, y lo establecido en 42 U.S.C.A. sec. 1983. También invocó la Ley General de *Injunction* de Puerto Rico, 32 L.P.R.A. sec. 3521 *et seq.*

■  Como puede apreciarse de todo lo anterior, la acción de Cintrón se instó al amparo primordialmente del ordenamiento jurídico de Puerto Rico. Su carácter esencial como una acción estatal se resalta precisamente por el hecho de que no se trajo de ningún modo a Estados Unidos o a las fuerzas armadas de Estados Unidos como parte en el pleito. *En ningún lugar se solicitó tampoco que la indemnización reclamada fuese pagada por el Gobierno de Esta-*

*dos Unidos.* No se invocó el *Federal Torts Claims Act* ni se aludió a las reclamaciones tipo *Bivens.* El mero hecho de que la Guardia Nacional sea, como admite el Procurador General, una entidad híbrida estatal y federal, no "federaliza" de ningún modo la acción de Cintrón. Tampoco lo hace el mero hecho de que Cintrón fuese un empleado civil del Ejército. Lo medular para determinar la naturaleza de la acción en cuestión es identificar cuáles son los derechos y remedios reclamados.(²) Los del caso de autos son primordialmente derechos y remedios que surgen del ordenamiento jurídico de Puerto Rico. Se trata esencialmente de una acción al amparo de la Constitución y de las leyes de Puerto Rico, sobre la cual los tribunales del país no sólo tienen jurisdicción, sino que deben ejercerla. Véase *Junta Dir. Cond. Montebello v. Fernández,* 136 D.P.R. 223, 234 (1994).

Por los fundamentos expuestos, *se dictará una sentencia para confirmar la del foro apelativo del 29 de junio de 2001.*(³)

El Juez Asociado Señor Corrada Del Río emitió una opinión disidente, a la cual se unieron los Jueces Asociados Señores Rebollo López y Rivera Pérez.

---

(²) A pesar de que la cuestión puede en ocasiones convertirse en un asunto complejo, la norma más clara sobre el particular es la famosa expresión del Juez Holmes: "a suit arises under the law that creates the action." *American Well Works Co. v. Layne,* 241 U.S. 257, 260 (1916).

(³) No nos pronunciamos aquí sobre la controversia de si Cintrón cumplió con el requisito de agotar los remedios administrativos pertinentes, o sobre cualquier otro asunto que no sea estrictamente la cuestión jurisdiccional que se discute en la opinión, que ha sido el único asunto objeto de litigación en el caso de autos hasta este momento.

— O —

Opinión disidente del Juez Asociado Señor Corrada Del
    Río, a la cual se unen los Jueces Asociados Señores Re-
    bollo López y Rivera Pérez.

Nos corresponde determinar si existe una causa de ac-
ción en daños y perjuicios a favor de un miembro de la
Guardia Nacional de Puerto Rico contra sus oficiales supe-
riores por actuaciones incidentales al servicio militar.

Dado que la mayoría se enfoca en discutir asuntos rela-
cionados a la jurisdicción concurrente entre el foro estatal
y el federal para entender en el caso, sin considerar la doc-
trina enunciada por el Tribunal Supremo de Estados Uni-
dos que prohíbe las causas de acción por daños ocurridos
dentro del curso del servicio militar, disentimos.

I

A principios de 1996 la Guardia Nacional comenzó una
investigación con el propósito de esclarecer los hechos re-
lacionados a la desaparición de un vehículo propiedad del
Gobierno federal, asignado a este cuerpo militar. Como
parte de la pesquisa, en febrero y marzo de ese año se le
tomaron dos declaraciones juradas al Sr. Carlos Cintrón
Jácome (en adelante el demandante recurrido o señor Cin-
trón Jácome). Este último ocupaba el cargo de reparador
de equipo militar en el referido cuerpo.

En ambas ocasiones el demandante recurrido negó te-
ner conocimiento sobre lo que se le preguntaba. Sin em-
bargo, el 15 de marzo de 1996 éste ofreció una tercera de-
claración jurada, en la cual relató los incidentes referentes
a la desaparición del vehículo y su participación en los
hechos.

Como resultado de la investigación, el 19 de agosto de
1996 la Guardia Nacional notificó al demandante recu-
rrido, mediante carta firmada por el Coronel Francisco A.

Márquez,(¹) que se proponía tomar acción disciplinaria en su contra. Se le informó que se le formularían cargos por mutilación de propiedad del Gobierno federal, uso indebido de ésta y por deliberadamente ofrecer declaraciones juradas falsas. Además, se le advirtió que tenía derecho a estudiar toda la prueba relacionada a su caso y a recibir explicaciones adicionales sobre la acción propuesta.

Luego de ofrecérsele una oportunidad para expresar por escrito su posición respecto a los cargos imputados, el 18 de noviembre de 1996, mediante memorando suscrito por el coronel Carlos A. Córdova, la Guardia Nacional notificó al demandante recurrido que sería despedido de su puesto como reparador de equipo pesado. La notificación advertía, además, sobre los procedimientos mediante los cuales podría apelar esta decisión.(²)

Así las cosas, el 25 de agosto de 1997 el señor Cintrón Jácome presentó una demanda ante el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante TPI), al amparo de la Regla 59 de Procedimiento Civil, 32 L.P.R.A. Ap. III, y de la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983. La demanda fue presentada contra el

---

(¹) Para ese entonces, el coronel Márquez ocupaba el puesto de *Surface Maintenence Manager* de la Guardia Nacional.

(²) Anejo a esta notificación, la Guardia Nacional incluyó un documento intitulado *Adverse Action Appeal Rights-Original Decision,* el cual expresa:

"If you consider this adverse action improper, you may appeal the decision by requesting an appellate review by the Adjutant General or an administrative hearing but not both. The appellate review involves an overall review of the official adverse action case file maintained in the Human Resources Office (HRO), together with any additional information you may provide. An administrative hearing affords you the opportunity to have a National Guard Hearing Examiner gather all available facts through an administrative hearing and then provide findings and recommendations to the Adjutant General who will then issue the appellate decision. Should you elect to appeal the decision, you have the right to be represented by an attorney or other representative of your choosing.

.   .   .   .   .   .   .   .

"The Adjutant General will render the appellate decision as soon as possible after the appellate review has concluded or after review of the hearing examiner's report and recommendation. An appellate decision by the Adjutant General will cancel the adverse action, sustain it, or substitute a less severe penalty. The right to appeal extends no further than the Adjutant General of Puerto Rico." Véase Apéndice, pág. 75.

Estado Libre Asociado de Puerto Rico, la Guardia Nacional y el general Emilio Díaz Colón (en adelante los demandados peticionarios), y en ésta se solicitaba interdicto permanente, sentencia declaratoria y daños y perjuicios. En síntesis, alegó que había sido despedido por motivaciones claramente político-partidistas, ya que era un miembro reconocido y activo del Partido Popular Democrático, en tanto que el general Emilio Díaz Colón era miembro reconocido del Partido Nuevo Progresista. Los demandados peticionarios contestaron la demanda negando las alegaciones relacionadas al despido.

Luego de varios trámites procesales, el 11 de agosto de 1998 los demandados peticionarios solicitaron al TPI que dictara sentencia sumaria a su favor, a base de los siguientes argumentos: (1) que el foro de instancia carecía de jurisdicción sobre la materia, (2) por falta de agotamiento de remedios administrativos, (3) por falta de una causa de acción que justificara la concesión de un remedio, y (4) por falta de parte indispensable.

En esencia, los demandados peticionarios trajeron a la atención del TPI la situación del demandante recurrido como empleado federal, y alegaron en consecuencia que tenía que acumularse como parte al Gobierno de Estados Unidos. Igualmente, apuntaron a que sus labores como técnico de la Guardia Nacional eran incidentales al servicio militar y, por lo tanto, no justiciables en cualquier foro civil.

El 15 de noviembre de 1999 se celebró una vista evidenciaria en la cual se presentó como único testigo al Sr. Juan Marrero, quien en ese momento fungía como Oficial de Personal Federal de la Guardia Nacional. En su testimonio, Marrero explicó que, a tenor con el *National Guard*

*Technicians Act*, 32 U.S.C. sec. 709,(³) el recurrido era empleado del Ejército de Estados Unidos.

El 15 de diciembre de 1999 el TPI dictó sentencia sumaria a favor de los demandados peticionarios. Dicho foro expresó que éstos habían probado satisfactoriamente que el señor Cintrón Jácome era un empleado federal y que éste no había provisto evidencia en contrario. También resolvió que carecía de jurisdicción sobre la materia, ya que la facultad del Ayudante General de la Guardia Nacional para contratar y despedir al recurrido emanaba de normas federales.

El señor Cintrón Jácome solicitó reconsideración, la cual fue denegada el 21 de enero de 2000. Luego, el 15 de febrero de 2000 éste presentó una apelación ante el Tribunal de Circuito de Apelaciones (en adelante TCA). Mediante sentencia emitida el 29 de junio de 2001, el TCA resolvió que el foro estatal tenía jurisdicción sobre la materia, basándose en nuestra decisión en *Roberts v. U.S.O. Council of P.R.*, 145 D.P.R. 58 (1998). En consecuencia, revocó al foro de instancia y le devolvió el caso para la continuación de los procedimientos.

Inconformes, los peticionarios recurren ante este Tribunal y señalan lo siguiente:

> Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que el Tribunal de Instancia tiene jurisdicción para adjudicar la causa de acción de autos[,] en contravención

---

(³) Esta ley dispone lo siguiente:

"*Sec. 709. Technicians: employment, use, status*

"(a) Under regulations prescribed by the Department of the Army ... persons may be employed as technicians in

　　"(1) the administration and training of the National Guard....

　　"(2) the maintenance and repair of supplies issued to the National Guard or the Armed Forces.

.　　.　　.　　.　　.　　.　　.　　.

　　"(d) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force as the case may be, *and an employee of the United States.*" (Énfasis suplido).

a la doctrina del Tribunal Supremo de los Estados Unidos que prohíbe las causas de acción contra oficiales militares que surgen en el curso del servicio militar rendido. Petición de *certiorari*, pág. 5.

Expedimos el auto de *certiorari* mediante Resolución de 14 de diciembre de 2001. Entendemos que el error señalado se cometió. Veamos.

## II

### A. *Ausencia de causa de acción en reclamaciones intramilitares por daños incidentales al servicio: Doctrina Feres*

En 1950 el Tribunal Supremo de Estados Unidos resolvió el normativo caso *Feres v. United States*, 340 U.S. 135 (1950). En esa ocasión, el Supremo federal tuvo ante su consideración una demanda incoada por unos soldados bajo el *Federal Tort Claims Act* (en adelante FTCA), 28 U.S.C. secs. 1346(b)(1) y 2671–2680, por alegados daños causados a éstos dentro del ámbito de la actividad militar. El Tribunal Supremo resolvió que el Gobierno federal no está sujeto a demandas bajo la FTCA por daños ocurridos a empleados militares en actos incidentales al servicio militar.

Fundamentó su decisión en dos argumentos principales. Primero, que las disposiciones de la FTCA son incompatibles con la naturaleza única de la relación entre el Gobierno y las Fuerzas Armadas. *Feres v. United States*, supra, págs. 142–143. Segundo, que el Congreso, al aprobar la referida ley, no creó nuevas causas de acción, sino que meramente extendió responsabilidad al Gobierno federal bajo circunstancias que conllevarían responsabilidad privada. *Feres v. United States*, supra, pág. 141. Por lo tanto, al considerar que bajo los hechos en controversia no existía una causa de acción contra una persona privada,

estimó el Tribunal que tampoco la había contra el Gobierno.([4])

El alcance de la doctrina tomó un giro importante varias décadas después con el caso *Chappell v. Wallace*, 462 U.S. 296 (1983). En *Chappell v. Wallace*, supra, el Supremo federal entendió en un reclamo de tipo *Bivens*([5]) por discrimen racial dentro del ámbito del servicio militar, instado por cinco oficiales no comisionados (*enlisted personnel*) de la Marina de Estados Unidos. A base del razonamiento de *Feres v. United States*, supra, el Tribunal resolvió que el personal militar no tiene derecho a una causa de acción en daños contra sus superiores. *Chappell v. Wallace*, supra, pág. 300. Al así concluir de forma unánime, expresó el Supremo federal que *esta prohibición responde a la estructura única que rige las fuerzas armadas y la injerencia exclusiva del Congreso en el campo militar. Chappell v. Wallace*, supra, pág. 301. Además, tomó en consideración el hecho de que el Congreso ha legislado para establecer sistemas de compensación por muerte y accidente, así como procedimientos de quejas y agravios internos disponibles al personal militar. Para sustentar lo anterior, hizo alusión al *Uniform Code of Military Justice*, 10 U.S.C.A. sec. 938,([6]) y a

---

([4]) Se expresó el Supremo federal de la siguiente manera:

"One obvious shortcoming in these claims is that plaintiffs can point to no liability of a "private individual" even remotely analogous to that which they are asserting against the United States .... Nor is there any liability 'under like circumstances,' for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command." *Feres v. U.S.*, supra, págs. 141–142.

([5]) *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Este caso resuelve que una violación de derechos constitucionales por parte de funcionarios federales puede dar lugar a una acción en daños contra éstos, aun en ausencia de una ley que autorice tal remedio.

([6]) *"Sec. 938. Art. 138. Complaints of wrongs*

"Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general courtmartial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong

lo dispuesto en 10 U.S.C.A. sec. 1552, en donde se crea una comisión para atender quejas presentadas por miembros de las fuerzas armadas y le otorga facultades para ordenar promociones de rango y el pago de sueldos de manera retroactiva.

Posteriormente, con la decisión *United States v. Stanley*, 483 U.S. 669 (1987), la doctrina Feres se concretó y definió de modo decisivo. En este caso, un militar retirado demandó al Gobierno por los daños que le ocasionó el habérsele administrado la droga LSD, sin su conocimiento o consentimiento, como parte de un experimento llevado a cabo por el Ejército. El máximo foro federal expidió el recurso por entender que debía aclarar su decisión en *Chappell v. Wallace*, supra, ya que la confusión imperante al respecto había producido resultados incoherentes entre diferentes tribunales de circuito. *U.S. v. Stanley*, supra, pág. 676.

Así pues, con esta opinión el Tribunal Supremo de Estados Unidos aprovechó para armonizar a *Feres v. United States*, supra, con su progenie, al aclarar que la relación oficial-subordinado no es el fundamento crucial de la doctrina, sino el aspecto de "incidental al servicio militar". *United States v. Stanley*, supra, págs. 680–681.[7]

Asimismo, la decisión no consideró determinante la ley bajo la cual se reclaman los remedios, y redondeó la doctrina a base de la prohibición de causas de acción *en daños* que surjan de actos "incidentales al servicio militar".[8] Ex-

---

complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon."

[7] *United States v. Stanley*, 483 U.S. 669, 680–681 (1987), establece: "since *Feres* did not consider the officer-subordinate relationship crucial, *but established instead an 'incident to service' test*, it is plain that our reasoning in *Chappell* does not support the distinction *Stanley* would rely on." (Énfasis suplido.)

[8] A pesar de que los casos que la Corte citó para ilustrar la inconsistencia en la doctrina se resolvieron a base de diferentes leyes, la mayoría en *United States v. Stanley*, supra, no fundamenta su *ratio decidendi* a base de ley específica. Es decir, no auscultó los propósitos y las peculiaridades de la ley bajo la cual se reclamaba para así concluir que las acciones en daños incidentales al servicio militar no se permitían específicamente bajo esa fuente legal.

Los casos que citó la opinión para señalar la inconsistencia de los tribunales de circuito fueron los siguientes: *Jorden v. National Guard Bureau*, 799 F.2d 99 (3er

plicó el Tribunal que, dado que la Constitución otorga jurisdicción exclusiva al Congreso para reglamentar los asuntos de disciplina militar, la intrusión judicial en esos menesteres sería inapropiada. Al analizar el texto de la Constitución, ese alto foro expresó:

> What is distinctive here is the specificity of that technically superfluous grant of power, and the insistence (evident from the number of Clauses devoted to the subject) with which *the Constitution confers authority over the Army, Navy, and militia upon the political branches.* All this counsels hesitation in our creation of *damages remedies* in this field. (Énfasis suplido.) *United States v. Stanley*, supra, pág. 682.

Así pues, la conclusión que puede colegirse de *Feres v. United States*, supra, *Chappell v. Wallace*, supra, y *United States v. Stanley*, supra, leídos en conjunto, es que se prohíbe toda causa de acción en daños que surja de actos incidentales al servicio militar, independientemente de la relación entre las partes en controversia. Esto es así ya que los tribunales civiles deben prestar deferencia a las decisiones militares, dada la peculiaridad de su estructura y disciplina.

Por lo tanto, el asunto medular del caso de autos es determinar si los daños que alega el demandante recurrido ocurrieron dentro del ámbito del servicio militar, para de ese modo dilucidar propiamente si éste tiene una causa de acción disponible.

B. *Extensión de la doctrina Feres a casos dentro del contexto del servicio civil en la Guardia Nacional*

La figura de la Guardia Nacional se encuentra reglamentada expresamente en el texto de la Segunda En-

---

Cir. 1986) (caso al amparo de 42 U.S.C.A. sec. 1983); *Trerice v. Summons*, 755 F.2d 1081 (4to Cir. 1985) (42 U.S.C.A. secs. 8787 1985–1986); *Mollnow v. Carlton*, 716 F.2d 627 (9no Cir. 1983) (*Bivens v. Six Unknown Fed. Narcotics Agents*, supra, y 42 U.S.C.A. secs. 1985–1986), y *Gaspard v. U.S.*, 713 F.2d 1097 (5to Cir. 1983) (*Bivens v. Six Unknown Fed. Narcotics Agents*, supra, y FTCA). Véase *United States v. Stanley*, supra, pág. 676.

mienda a la Constitución de Estados Unidos,(⁹) a través de su precursor histórico: la "milicia".(¹⁰) Según el profesor Tribe, la llamada "cláusula de la milicia" tiene el propósito de preservar la autonomía estatal sobre la Guardia Nacional. Véase L.H. Tribe, *American Constitutional Law*, 3ra ed., Nueva York, Ed. Foundation Press, 2000. Por tal razón, se tiende a caracterizar a la Guardia Nacional como una entidad completamente estatal.

Sin embargo, a pesar de que parte de la responsabilidad sobre este cuerpo militar es providencia de los estados, la Constitución federal confiere al Congreso control exclusivo sobre ciertos aspectos de su funcionamiento. De este modo, la Constitución federal dispone:

> El Congreso tendrá facultad:
>
> . . . . . . . .
>
> Para dictar reglas para llamar la milicia a fin de hacer cumplir las leyes de la Unión, sofocar insurrecciones y repeler invasiones;
>
> *Para proveer para la organización, armamento y disciplina de la milicia y el gobierno de aquella parte de ella que estuviere al servicio de los Estados Unidos,* reservando a los estados respectivos el nombramiento de los oficiales y la autoridad para adiestrar a la milicia *de acuerdo con la disciplina prescrita por el Congreso.* (Énfasis suplido.) Art. I, Sec. 8, Const. E.E.U.U., L.P.R.A., Tomo 1, ed. 1999, págs. 167–168.

Como se puede observar, la Guardia Nacional es una agencia híbrida estatal y federal. Mientras que lo pertinente a asuntos administrativos tales como el nombramiento de oficiales y el entrenamiento de éstos es responsabilidad estatal, el prescribir normas para reglamentar todo lo referente a los procesos disciplinarios de las tropas

---

(⁹) "Siendo necesaria para la seguridad de un Estado libre una milicia bien organizada, no se coartará el derecho del pueblo a tener y portar armas." Emda. II, Const. EE.UU., L.P.R.A., Tomo 1, ed. 1999, pág. 181.

(¹⁰) Véase E. Roy Hawkins, *The Justiciability of Claims Brought by National Guardsmen Under the Civil Rights Statutes for Injuries Suffered in the Course of Military Service*, 125 Mil. L. Rev. 99, 102 (1989).

es materia exclusiva del Congreso.[11] Esta jurisdicción exclusiva se explica por la peculiaridad de la relación oficial-subordinado, y los efectos perniciosos que podrían resultar si se permitiera a los tribunales involucrarse en asuntos de disciplina militar. E. Roy Hawkins, *The Justiciability of Claims Brought by National Guardsmen Under the Civil Rights Statutes for Injuries Suffered in the Course of Military Service*, 125 Mil. L. Rev. 99, 109 (1989).

Igualmente, el carácter sui géneris de los empleados de la Guardia Nacional refleja esta hibridez. La Guardia Nacional combina personal militar y civil. Los empleados civiles se conocen comúnmente como "técnicos" o *technicians*, término que surge directamente del *National Guard Technicians Act*.[12] Sin embargo, aunque las funciones del personal civil corresponden a las de cualquier empleado civil en otra organización estatal o privada, su función se da en el particular contexto militar. De hecho, se ha resuelto que el trabajo de un técnico de la Guardia Nacional es una combinación de militar y civil, pero que estos dos aspectos del trabajo *son inseparables. Wright v. Park*, 5 F.3d 586, 589 (1er Cir. 1993). Además, estos técnicos tienen que simultáneamente ser miembros de la Guardia Nacional en el rango especificado por el Secretario de la rama militar pertinente. 32 U.S.C.A. sec. 709(b).

Por ende, dado el carácter "inseparable" de las funciones civiles y militares de estos técnicos, las funciones de estos empleados civiles de la Guardia Nacional son incidentales al servicio militar, y como tal, cubiertas por la doctrina resultante de los antes citados casos *Feres v. United States, Chappell v. Wallace* y *United States v. Stanley*.

---

[11] Al amparo de esta autoridad, el Congreso ha aprobado legislación con el propósito de prescribir normas de disciplina en la Guardia Nacional, además de crear el "National Guard Bureau", cuerpo adjunto a los Departamentos del Ejército y de la Fuerza Aérea, cuya responsabilidad principal es el asegurarse de que la Guardia Nacional de cada estado o territorio cumpla con la reglamentación federal referente a la disciplina y preparación de las tropas. Véase 10 U.S.C.A. sec. 10501 *et seq.*

[12] 32 U.S.C.A. sec. 709. Este estatuto proveyó específicamente para que este personal se considere como empleados federales. Véase escolio 3.

A esos efectos, nos parece ilustrativo el citado caso *Wright v. Park*. En *Wright v. Park*, supra, la Corte de Apelaciones de Estados Unidos para el Primer Circuito atendió precisamente la controversia ante nuestra consideración: la procedencia de una acción de daños y perjuicios por alegada violación a los derechos civiles contra oficiales militares superiores, por una persona empleada con la Guardia Nacional según las disposiciones del *National Guard Technicians Act.*

El Primer Circuito concluyó que la naturaleza dual pero indivisible del trabajo de los técnicos de la Guardia Nacional *hacen que cualquier acción dirigida a la función civil del técnico sea incidental al servicio militar, por lo que estaría proscrita por Feres v. United States*, supra *y su progenie.*(¹³)

A base de este estado de derecho, procedemos a dilucidar la controversia de autos.

## III

La controversia de autos se suscitó mientras el demandante recurrido se desempeñaba como "técnico" de la Guardia Nacional de Puerto Rico, cuerpo militar del cual era miembro enlistado. Además, las labores que éste realizaba, y de las cuales surgen los actos que dan base a la reclamación de autos, eran incidentales a su membresía en dicho cuerpo, tanto por su naturaleza como por la forma en que están descritas en la ley que las crea.(¹⁴) De igual modo, el proceso disciplinario al que el demandante recurrido fue

---

(¹³) Explicó dicho foro:

"... While a technician's job is a composite containing both civilian and military pieces, the job's dual aspects are inseparable; they are like Chang and Eng joined at the chest.

.    .    .    .    .    .    .

"Since a technician's dual roles are too tightly imbricated to be pried apart at a litigant's whim, appellant necessarily suffered the injury of which he complains in his military capacity." *Wright v. Park*, 5 F.3d 586, 591 (1er Cir. 1993).

(¹⁴) Véase esc 3.

sometido se produjo dentro de la cadena de mando inherente a la actividad militar. Así pues, entendemos que en ausencia de un mandato legislativo en contrario, no existe base racional para no extender al caso de autos los postulados de la doctrina *Feres*.

Ciertamente, en el presente caso está presente la premisa básica que sustenta a *Feres v. United States*, supra, y su progenie, entiéndase, *la no intervención de los tribunales con asuntos incidentales a la actividad militar dada la singularidad de la estructura y la disciplina de las fuerzas armadas.* Este postulado es tan fundamental que el Tribunal Supremo de Estados Unidos ha aplicado la doctrina *Feres* indistintamente de la ley por la cual se reclama, y de la identidad y relación entre las partes en controversia.[15]

Por consiguiente, sostenemos que la Guardia Nacional es un cuerpo militar cuya jurisdicción disciplinaria recae exclusivamente sobre el Congreso, igual que las ramas militares tradicionales. Similarmente, la capacidad en que se emplean los técnicos de este cuerpo, a pesar de ser híbrida, es preponderantemente militar, y por ello los actos de estos empleados se consideran incidentales al servicio militar. Por lo tanto, aplicaríamos al caso de autos la doctrina *Feres*.

Por el contrario, la opinión mayoritaria se centra en discutir la presunción de jurisdicción concurrente de los tribunales estatales y federales para atender casos surgidos al amparo del derecho federal. Explica, además, que la excepción a este principio es que haya una determinación expresa en contrario por parte del Congreso, o que el Tribunal Supremo federal lo haya declarado así cuando entienda que la intención del Congreso a esos efectos es palmariamente clara. Así, concluye que ninguna de esas dos circunstancias ocurre en el caso de autos, por lo que podemos entender en éste. No estamos de acuerdo.

---

[15] Recordemos que *United States v. Stanley*, supra, aclaró que el elemento fundamental de la doctrina *Feres* es que el daño por el cual se reclama sea incidental al servicio militar, y no la identidad o la capacidad de las partes.

El presente recurso no requiere que determinemos a qué foro le corresponde atender el caso, sino determinar si existe una causa de acción en daños a favor del demandante recurrido. En relación con la controversia que nos atañe, el máximo foro federal resolvió clara y expresamente la inexistencia de causas de acción por daños y perjuicios dimanantes de actos ocurridos dentro del ámbito militar (*incident to military service*). *United States v. Stanley*, supra, págs. 680–681; *Chappell v. Wallace*, supra, pág. 300. A esos efectos, el Supremo federal expresó que la razón para dicha postura responde a que:

[c]enturies of experience have developed a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns. *Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers*; that relationship is at the heart of the necessarily unique structure of the Military Establishment. (Énfasis suplido.) *Chappell v. Wallace*, supra, pág. 300.

Por lo tanto, la discusión de si debe ser el foro federal o el estatal el que atienda el caso es irrelevante, ya que lo que ha resuelto el Tribunal Supremo federal es que las controversias por daños incidentales al servicio militar se tienen que resolver dentro de las estructuras de justicia militar pertinentes, de acuerdo con la reglamentación que el Congreso, como cuerpo con jurisdicción exclusiva para reglamentar la disciplina de la Guardia Nacional, apruebe al respecto. Así pues, no existen causas de acción por actos de esa naturaleza en los tribunales civiles.

Del mismo modo, la mayoría expresa que el Tribunal Supremo de Estados Unidos no se ha expresado en torno a acciones como la de autos, cuya controversia es entre un "mero empleado de la Guardia Nacional" y el E.L.A. Reite-

ramos que esa no es la controversia medular del caso.(¹⁶) A la luz de *United States v. Stanley*, supra, el asunto jurisdiccional cardinal es determinar si la controversia surge de hechos incidentales al servicio militar. En consecuencia, la pregunta de rigor para los tribunales al evaluar la existencia de una causa de acción en asuntos como el de autos no es ¿cúales son las partes en controversia?, o ¿bajo el palio de qué ley surge la causa de acción?, sino: ¿es la controversia incidental al servicio militar?

Por ende, al resolver como lo hizo, la mayoría al menos debió explicar por qué entiende que los hechos en controversia no se suscitaron dentro del ámbito militar.(¹⁷) Más importante aún, debió explicar por qué entiende que debemos separarnos de lo establecido por el más alto foro federal, en el sentido de que no se fomenta que los tribunales civiles entren a evaluar la sabiduría de las decisiones tomadas dentro de la esfera militar, dada la peculiar naturaleza y estructura disciplinaria de las fuerzas armadas.(¹⁸)

---

(¹⁶) Expresó la mayoría en *United States v. Stanley*, supra, pág. 684, que:

"... [t]he availability of a damages action under the Constitution for particular *injuries* (those incurred in the course of military service) is a question logically distinct from immunity to such an action on the part of particular *defendants*." (Énfasis en el original).

(¹⁷) Los tribunales han aplicado este estándar liberalmente. Por ejemplo, el máximo foro federal ha extendido la doctrina a casos en que los demandantes eran personas no militares subrogadas en los derechos de militares, *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666 (1977); a reclamaciones por personal militar franco de servicio al momento de sufrir los daños, *United States v. Shearer*, 473 U.S. 52 (1985), y a reclamaciones de empleados militares por daños causados por empleados federales no militares, *United States v. Johnson*, 481 U.S. 681 (1987).

(¹⁸) Además de *Feres* y su progenie, que se limita a pautar la ausencia de causas de acción por daños ocasionados dentro del ámbito del servicio militar, el Tribunal Supremo federal resolvió *Gilligan v. Morgan*, 413 U.S. 1 (1973). En ese caso, se cuestionó si el poder congresional sobre la milicia se socavaría de permitírsele a una corte de distrito federal examinar el patrón de entrenamiento, de armamento y órdenes en general de la Guardia Nacional, para así determinar si éste fue apropiado a la luz de unos hechos específicos. Resolviendo en la afirmativa, el Supremo federal expresó:

"It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible —as the Judicial Branch is not— to the electoral process. *Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence.* The complex, subtle, and professional decisions as to the composition, training, equipping, and control of the military force are essentially profes-

## IV

En conclusión, sostenemos que si bien el TPI, ante los hechos del caso de epígrafe, concluyó correctamente que carecía de autoridad para adjudicar daños sobre el despido del demandante recurrido, se fundamentó equivocadamente en que el foro estatal no tiene jurisdicción para dilucidar asuntos en que son de aplicación leyes y jurisprudencia federal.

De igual modo, el TCA correctamente revocó este pronunciamiento del TPI al resolver que, como regla general, los tribunales de Puerto Rico pueden dilucidar y adjudicar controversias tomando como base el derecho federal. Sin embargo, tanto dicho foro como la mayoría de este Tribunal se equivocan al concluir que existe una causa de acción en los tribunales estatales por daños incidentales al servicio militar, sin considerar la doctrina *Feres*, explicada detalladamente en esta opinión. Al así decidir, obviaron que es mediante los procedimientos internos de justicia militar, establecidos por el Congreso para reglamentar el quehacer de las tropas, que un empleado militar puede reclamar daños y perjuicios contra sus superiores.

Por no resolver de este modo la mayoría, disentimos.

---

sional military judgments, subject always to civilian control of the Legislative and Executive Branches." (Énfasis en el original suprimido y énfasis suplido.) *Gilligan v. Morgan*, supra, pág. 10.