ENRIQUE BLANCO ROJO, peticionario y recurrido, *v.* ADMINISTRACIÓN DE ESTABILIZACIÓN ECONÓMICA, demandada y recurrente; VÍCTOR NEGRÓN LÓPEZ, interventor.

*Números:* CE-66-61, CE-66-64      *Resueltos:* 6 de junio de 1968

*Peñagarícano & Lloveras,* abogados de Víctor Negrón López; *Miguel Franquiz Ventura, Eduardo A. Ruiz, Mercedes Dolz Pérez* y *Everilda Rodríguez de Mejías,* abogados de la Administración de Estabilización Económica de Puerto Rico; *Nieves M. Agostini de Torres* y *Carmen B. Hernández,* abogadas de Enrique Blanco Rojo.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Es sorprendente cómo un administrador público pretende ejercer unas facultades de reglamentación que la ley le había quitado seis meses antes.

Como se sabe, en nuestro ordenamiento la norma general es la libertad de contratación. En el campo de los alquileres, como también ha sido necesario hacerlo en otras materias, la Asamblea Legislativa de Puerto Rico, por razones de orden público, decretó unas excepciones a dicha norma general al aprobar la Ley de Alquileres Razonables. [1] Desde la aprobación de esa ley en el año 1946 hasta el 19 de junio de 1964 todos los locales de alquiler en Puerto Rico que no estaban cubiertos por la Ley (federal) de Emergencia para el Control de Precios de 1942 estaban bajo la égida de la Administración de Estabilización Económica, antes Oficina de Administración de Precios. En 19 de junio de 1964 se aprobó en Puerto Rico la Ley Núm. 67, la cual enmendó una serie de artículos de nuestra Ley de Alquileres Razonables e introdujo importantes modificaciones en la misma. Una de estas modificaciones está contenida en el nuevo Art. 4, según enmendado en el año 1964, cuyo inciso (b) dispone ahora que:

"No se aplicarán las disposiciones de esta ley a las siguientes propiedades: . . . . A toda unidad de alquiler con una renta de $200.00 ó más por mes cuando la misma se usa para vivienda y con una renta de $400.00 ó más por mes cuando se usa para fines de negocios, industria, oficinas profesionales, o para fines sociales y recreativos." [2]

Los hechos de este caso son los siguientes. En primero de noviembre de 1963 Enrique Blanco Rojo (arrendador) arrendó mediante contrato a Víctor Negrón López por un

---

[1] Para las razones de orden público aludidas véase la Exposición de Motivos de esa ley, 17 L.P.R.A. sec. 181. Art. 1 de la Ley Núm. 464 de 25 de abril de 1946, Leyes de ese año, pág. 1327.

[2] Art. 4(b)(4). 17 L.P.R.A. sec. 184(b)(4).

término de diez años un local comercial sitio en el Núm. 1505 de la Avenida Roosevelt, Río Piedras, Puerto Rico, por un canon de $550.00 mensuales. Unos meses más tarde, en 9 de enero de 1964, el inquilino solicitó de la Administración de Estabilización Económica que le rebajase dicho canon. Ese mes, en 30 de enero de 1964, el Administrador de Estabilización Económica le fijó a dicho local un canon máximo provisional de $550.00 mensuales, canon que regiría hasta que el mismo fuese determinado por una orden final.

En 18 de junio de 1964 el Administrador firmó una notificación titulada "Alquiler que nos Proponemos Fijar" mediante la cual informó a las partes que la Administración se proponía fijar a la unidad en cuestión un alquiler máximo de $183.50 por mes, efectivo el 30 de enero de 1964.([3]) De manera que a esa fecha, en 18 de junio de 1964, no existía para ese local un canon final o permanente fijado por la Administración de Estabilización Económica sino que existía un canon máximo provisional de $550.00 mensuales y un aviso de que la Administración se proponía fijar—pero no lo había hecho—un canon de $183.50 por mes.

La aludida notificación informaba a las partes que de no estar de acuerdo con la renta propuesta debían dirigirse por escrito dentro de un plazo de diez días al Administrador. De no hacerlo así, se les informaba, "la Administración emitirá orden final de acuerdo con este aviso." Así las cosas, al día siguiente del Administrador haber firmado el mencionado aviso comenzó a regir la Ley Núm. 67 de 19 de junio de 1964, pues la misma es de vigencia inmediata. Ésta es la ley que

---

([3]) Presumimos que esta determinación conllevaba la obligación del arrendador de devolverle al inquilino el balance hasta $550.00 mensuales por los cuatro meses y medio transcurridos desde el 30 de enero al 18 de junio de ese año. La razonabilidad de esto es cuestionable ya que no se trataba de una violación a una orden de la Administración sino que se trataba de un canon comercial acordado libremente por ambas partes y autorizado provisionalmente por el propio Administrador mediante su orden de 30 de enero de 1964.

dispuso en forma expresa y clara que las disposiciones de la Ley de Alquileres Razonables no se aplican a las unidades de alquiler comerciales cuya renta es de $400.00 ó más por mes. Dentro del mencionado plazo de 10 días, el 24 de junio de 1964, el arrendador presentó al Administrador una "Solicitud de Descontinuación de los Procedimientos Administrativos y Archivo de los Casos" en vista de lo dispuesto en el antes citado nuevo Art. 4(b)(4) de la Ley de Alquileres Razonables, según enmendada en 19 de junio de ese año. El Administrador declaró sin lugar esa petición.

Seis meses después de estar en vigor dicha Ley Núm. 67, el Administrador de Estabilización Económica aplicó las disposiciones de la Ley de Alquileres Razonables a la unidad de alquiler aquí envuelta y mediante su orden de 20 de enero de 1965, titulada "Orden Fijando Alquiler Máximo," rebajó el alquiler de dicho local de $550.00 mensuales a $183.50. De esa actuación del Administrador recurrió el arrendador para ante el Tribunal Superior, Sala de San Juan. El Tribunal revocó al Administrador y resolvió que la Ley Núm. 67 de 1964 privó de jurisdicción al Administrador para intervenir con la unidad de alquiler aquí concernida.

De la mencionada decisión del Tribunal Superior recurrieron a nosotros el Administrador de Estabilización Económica y el inquilino. Sostienen éstos, en esencia, que lo dispuesto en la Ley Núm. 67 de 1964 no se aplica a este caso en particular y que lo dispuesto en dicha ley al enmendar el Art. 4(b)(4) de la Ley de Alquileres Razonables no opera de pleno derecho. También argumentan que el inquilino tenía un derecho adquirido que no podía ser perjudicado por la Ley Núm. 67.

En un caso no idéntico pero sí similar al de autos, en el cual se trataba de un local de vivienda que antes de regir la Ley Núm. 67 se había alquilado en $250.00 mensuales y al cual el Administrador le fijó en marzo de 1965 un canon

de $140.15, resolvimos prácticamente, en forma adversa para los recurrentes, los primeros dos planteamientos antes mencionados; estos son, que la Ley Núm. 67 no opera de pleno derecho y que no se aplica al caso en cuestión por estar éste pendiente en la Administración al comenzar a regir la Ley Núm. 67. En dicho caso *Vda. de Hernández* v. *Pérez Colón, Admor.*, 94 D.P.R. 807 (1967), nos expresamos como sigue:

". . . Concluimos, por lo tanto que la disposición eximente del Art. 4 de la ley opera de pleno derecho una vez que se determina que la unidad de alquiler cumple con los requisitos de exención. [Renta de $200 ó más en viviendas y de $400 ó más en locales comerciales.] El hecho que dicha unidad hubiese estado sujeta al control del Administrador antes de entrar en vigor la disposición eximente en 19 de junio de 1964, [la Ley Núm. 67 de esa fecha] en nada altera el resultado pues el Administrador no actuó en cuanto a la misma antes de esa fecha. . . ."

Esto es así porque la determinación de si va a existir o no control de alquileres es una determinación de política pública que corresponde a la Asamblea Legislativa decidir y no a los Tribunales de Justicia ni al Administrador de Estabilización Económica. Con la misma facultad que la Asamblea Legislativa decretó en el 1946 un control casi total de los alquileres, en el 1964 determinó que los locales de vivienda que paguen $200.00 ó más y los locales comerciales que paguen $400.00 ó más no estarán bajo el control y la reglamentación de la Administración de Estabilización Económica. No vemos cómo el Administrador de esa oficina puede regatearle a la Asamblea Legislativa que aprobó la ley y a su superior inmediato, el Gobernador, quién la firmó, la facultad de hacer esas determinaciones de orden público. La letra de la Ley Núm. 67 es explícita y clara y la misma no condiciona su vigencia al uso de ninguna discreción de parte de la Administración de Estabilización Económica ni a que se lleve a cabo procedimiento alguno ante esa oficina. No teniendo la propia ley condiciones, el Administrador no puede ponérse-

las.(⁴) En el mismo sentido en que aquí estamos resolviendo y también tratándose de control de alquileres, véanse *Grosz* v. *Conser*, 45 N.W.2d 734 y *Woods* v. *Benson Hotel Corporation*, 177 F.2d 543.

Acertado estuvo el Secretario de Justicia de Puerto Rico cuando en su opinión de 6 de agosto de 1965 dirigida al Administrador de Estabilización Económica, solicitada por éste, y la cual trata sobre el Art. 4(b) (4) que aquí nos ocupa, le comunicó al Administrador lo siguiente:

"A base de lo expresado, soy de opinión que la exención que establece el artículo 4(b) (4) de la Ley de Alquileres Razonables opera de pleno derecho. En su consecuencia, entiendo que el Administrador de Estabilización Económica carece de facultad para revisar, aumentar o rebajar, los cánones de arrendamiento pactados entre las partes en ese caso. . . ."

En ausencia de expresión legislativa en contrario, estimo que la exención mencionada cubre a toda unidad de alquiler, la renta pactada de la cual sobrepase las cantidades dispuestas por ley, independientemente de la fecha de celebración del contrato de arrendamiento. En otras palabras, toda unidad de alquiler, en las circunstancias expresadas, queda fuera del control de la Administración de Estabilización Económica después del 19 de junio de 1964, fecha de vigencia de la Ley Núm. 67."

■ El planteamiento sobre derecho adquirido no tiene mérito. Todo lo que la Administración había determinado antes de comenzar a regir la Ley Núm. 67 de 1964, se reduce a dos cosas: una determinación de canon máximo *provisional* de $550.00 mensuales y un aviso de que la Administración *se proponía* fijar un canon de $183.50. El inquilino no había adquirido ningún derecho de propiedad o de naturaleza contractual que pudiese estar protegido por la doctrina del derecho adquirido. Ni siquiera había una orden de la Administración que fuese final o definitiva sobre el particular.

(⁴)Véase lo que hemos dicho sobre la facultad inexistente de los administradores públicos de decretar legislación en *Castle Enterprises* v. *Registrador*, 87 D.P.R. 775, 780 (1963).

Existían solamente dos expresiones, ninguna de las cuales era final y las cuales dependían de una determinación futura.([5])

*No se cometieron los errores señalados. Se confirmará la sentencia dictada en estos casos por el Tribunal Superior, Sala de San Juan, en 10 de noviembre de 1966.*

El Juez Asociado Señor Dávila concurre en el resultado.

---

([5]) Para una relación de casos sobre derecho adquirido en apoyo de lo que aquí resolvemos, la cual es demasiado numerosa para ser aquí citada, véase la anotación contenida en el escolio 3 de la Sec. 2044 de *Sutherland Statutory Construction*, 3ra. ed., Vol. 1, pág. 527. También véanse las autoridades citadas en *Black Law Dictionary*, 4ta. ed., pág. 1735.