FERNANDO T. POU ESTAPE, demandante y recurrido, *v.* FONDO DEL SEGURO DEL ESTADO, demandado y recurrente.

*Número:* R-78-349        *Resuelto:* 29 de enero de 1979

*Héctor A. Colón Cruz, Procurador General, Reina Colón de Rodríguez, Procuradora General Auxiliar,* abogados del recurrente; *Héctor L. Márquez,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Nos confrontamos en este caso con una situación en que unos administradores públicos se arrogan ciertas facultades

que la ley no les confiere. Naturalmente, tal conducta choca con un régimen de Derecho y la misma no puede subsistir. (¹)

Mediante carta de 28 de junio de 1976 el Administrador del Fondo del Seguro del Estado destituyó al apelante recurrido del cargo de Director de Análisis de Sistemas Electrónicos en la Oficina de Cómputos del Fondo, cuyo cargo estaba incluido dentro del Servicio Exento bajo la Ley de Personal vigente en aquella fecha, Ley Núm. 345 de 12 de mayo de 1947, según enmendada, 3 L.P.R.A. sec. 641 y ss. Como surge de la propia carta, motivó dicha destitución un arresto y acusación por delito grave de que fue objeto el empleado destituido. La carta de despido lee como sigue:

"Estimado señor Pou: La División de Investigaciones Especiales del Departamento de Justicia realizó una investigación sobre irregularidades en la tramitación y pago de dietas retroactivas en el Fondo del Seguro del Estado que concluyó con su arresto y acusación por delito grave de Hurto Mayor.

En virtud de esta situación y conforme a los poderes que confiere la ley al Administrador hemos procedido a destituirlo del puesto 1367 de Director de Análisis de Sistemas Electrónicos en la Oficina de Cómputos con efectividad al 25 de junio de 1976."

En 9 de julio de 1976 Pou Estape apeló de la decisión del Administrador del Fondo a la Junta de Apelaciones del Sistema de Administración de Personal, que denominaremos de aquí en adelante la Junta, creada por la nueva y vigente Ley de Personal de 1975, Sec. 7.1, 3 L.P.R.A. sec. 1381. La Junta ordenó al Fondo que presentase un escrito sobre los hechos que dieron lugar a la destitución del apelante, lo cual hizo el Fondo el 20 de julio de 1977. Mediante Orden de 2 de agosto de 1977 la Junta asumió jurisdicción del caso. Mediante Moción de 30 de septiembre del mismo año el apelante informó a la Junta que un tribunal había determinado que no existía causa probable contra el apelante en relación con el delito im-

---

(¹) Para una situación parecida puede verse *Blanco Rojo* v. *A.E.E.*, 96 D.P.R. 231 (1968).

putádole. La Junta señaló vista para el 2 de diciembre de dicho año para el caso en su fondo, la cual fue presidida, por el Secretario de la Junta. En dicha vista el Fondo solicitó y obtuvo un término para impugnar por escrito la jurisdicción de la Junta, lo cual hizo en 3 de febrero de 1978 argumentando que el apelante al ser despedido ocupaba un puesto en el servicio exento bajo la anterior Ley de Personal y que no habiéndosele formulado cargos al apelante la destitución estaba dentro de las facultades de la autoridad nominadora, bajo aquella ley, y la presente Junta no tenía jurisdicción sobre el asunto. Sin embargo, la Junta, mediante una Resolución Interlocutoria, de 4 de mayo de 1978, aún aceptando que el apelante estaba en el servicio exento y que la ley aplicable al caso es la anterior Ley de Personal, la Ley Núm. 345 de 12 de mayo de 1947, antes citada, en su mencionada Resolución Interlocutoria expresa la sorprendente teoría de que a pesar de lo anterior, es "la política de esta Junta conocer en apelación [*sic*] las destituciones de los empleados dentro del servicio sin oposición y del servicio exento cuando, como en el del caso de epígrafe, se le hacen imputaciones y no tiene un foro disponible para dilucidar los mismos."

No conforme con dicha Resolución Interlocutoria el Fondo recurrió al Tribunal Superior mediante solicitud de Revisión. Hizo dos planteamientos que pueden resumirse en uno: señaló que incidió la Junta al asumir jurisdicción en el caso de un empleado del servicio exento, caso gobernado por la Ley de Personal anterior y la cual no le daba ni derecho al empleado a ir a la Junta ni jurisdicción a la Junta para entender en esa clase de casos.

En 22 de agosto de 1978 la ilustrada Sala sentenciadora dictó Sentencia desestimando el recurso de Revisión y lúcidamente expresa que el nuevo reglamento no da jurisdicción sino que la jurisdicción solamente la confieren la Constitución y las leyes, pero luego se basa en la Sec. 7.16, 3 L.P.R.A. sec. 1396, de la nueva y vigente Ley de Personal, Ley de Personal

del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1301 y ss., ley que no gobierna este caso, y expresa que el estatuto vislumbra que las revisiones de la Junta se dan únicamente sobre decisiones finales de la Junta y que como lo que se solicita en el recurso de Revisión es la revisión de una decisión interlocutoria debe desestimarse, y desestima, el recurso por falta de jurisdicción.

Sin duda consciente del problema mayor que hemos señalado—el de falta de jurisdicción de la Junta en estos casos del servicio exento de la Ley Núm. 345—la ilustrada Sala sentenciadora termina su Sentencia con un escolio en el cual hace claro que "En forma alguna debe entenderse esta decisión como una convalidación de la decisión interlocutoria de la Junta asumiendo jurisdicción sobre la controversia." Añade el tribunal que "Esta decisión no adelanta criterio alguno en cuanto a si la Junta actuó correctamente o no." Planteado así el problema principal del caso y no resuelto, y dado el interés público en aclarar esta situación para los tribunales, para los administradores públicos concernidos y para los propios empleados públicos este Tribunal en 22 de noviembre de 1978 expidió una Orden para Mostrar Causa señalando lo antes dicho y con el objeto de determinar la jurisdicción o falta de ella de la Junta de Apelaciones del Sistema de Administración de Personal en estos casos.

■ Todos los funcionarios y los empleados públicos desde los más encumbrados hasta los menos poderosos tienen plena e incuestionable facultad para ejercer los poderes y deberes que les confieren la Constitución y las leyes, pero asimismo no pueden arrogarse *motu proprio*, sin autoridad clara de ley, poderes y facultades que no les han sido así conferidas. Esta premisa mayor es un *sine qua non* del sistema de gobierno en el cual prevalece el imperio de la ley, en contraste con los sistemas en los cuales impera el arbitrio arbitrario de los regímenes dictatoriales.

El caso de autos, al parecer es uno del montón, sin embargo plantea la importante cuestión que dejamos expresada: hasta dónde llegan y en dónde terminan los poderes y las facultades de los funcionarios y empleados públicos.

■ De lo dicho anteriormente en esta opinión puede verse que la Junta no tenía ni tiene jurisdicción para entender en casos de servicio exento gobernados por la anterior Ley de Personal, Ley Núm. 345 de 1947, antes citada. Se recordará que la ley dividía el servicio público en tres grupos: (1) Servicio Exento, (2) Servicio sin Oposición y (3) Servicio por Oposición, 3 L.P.R.A. sec. 642(4).

■ El Servicio Exento, como lo dice su nombre, estaba exento de la reglamentación de la Ley de Personal y de sus reglamentos. En dicho Servicio la autoridad nominadora tenía completa libertad para nombrar y despedir personal. Nombraba sin sujeción a exámenes previos, a ternas o a requisito alguno y también despedía en el momento en que estimaba que debía hacerlo, sin sujeción a formulación de cargos, a notificación previa, a vista y a justa causa. Tenía la misma libertad para nombrar como para despedir.

En el Servicio sin Oposición la autoridad nominadora tenía considerable libertad para escoger y nombrar, excepto que el candidato escogido tenía que llenar los requisitos del cargo de que se tratase, cuyos requisitos estaban especificados en el Plan de Clasificación de la Oficina de Personal y el sueldo de la plaza estaba pre-fijado en la escala de retribución del gobierno. En otras palabras, en el Servicio sin Oposición los puestos y el sueldo estaban reglamentados pero la selección y despido eran libres de parte de la autoridad nominadora.

El Servicio por Oposición, el mayor de los tres en cuanto a cantidad de empleados cubiertos, era, estrictamente hablando, el verdadero servicio de mérito. En dicho servicio la libertad de nombrar y de despedir la autoridad nominadora

estaba seriamente limitada. Debía nombrar de una lista de cinco candidatos elegibles que le certificaba el Director de Personal. Los sueldos y los puestos estaban clasificados. Los incumbentes en dichos cargos sólo podían ser destituidos por justa causa y previa formulación de cargos, con derecho a vista y a defensa. La Ley disponía el procedimiento para ello. 3 L.P.R.A. sec. 671.

Cada uno de dichos tres servicios—el Servicio Exento, el Servicio sin Oposición y el Servicio por Oposición—tenían sus ventajas y sus desventajas. El funcionario o empleado que entraba en ellos los aceptaba con las ventajas y las desventajas que cada uno conllevaba. Por ejemplo, el Servicio Exento incluía los cargos de confianza, el incumbente no tenía que aprobar exámenes, no tenía que ser certificado por el Director de Personal, su sueldo no estaba limitado por los planes de retribución general y tomaba vacaciones cuando las solicitaba y su superior las aprobaba. Algunos de estos cargos en el Servicio Exento conllevaban también otros atractivos. Por ejemplo, podían ser jefes de departamentos, de agencias, ayudantes y asesores del Gobernador o de los jefes de departamentos, sus cargos generalmente estaban bien remunerados y los incumbentes tenían la satisfacción íntima de participar en la formulación y en la ejecución de la política pública del gobierno. Generalmente, y con excepciones, el Servicio Exento, debido a esa participación personal en la función gobernativa, atraía y atrae un personal distinto al que generalmente atraía el Servicio por Oposición. Este personal está dispuesto a aceptar los riesgos del Servicio Exento a cambio de sus ventajas y oportunidades de servir. En el Servicio por Oposición el empleado prefiere la seguridad en el cargo. De manera que no había nada ilegal cuando la autoridad nominadora ejercía las facultades que la ley le confería al nombrar o al despedir a un funcionario o empleado comprendido en el Servicio Exento de la citada Ley Núm. 345. Para una exposición

un poco más explícita puede verse *Pastor Lozada* v. *Director Ejecutivo*, 101 D.P.R. 923, 927–929 (1974).

En el caso de autos no surge en forma alguna que la motivación del despido del apelante fuese una de índole política, como él alega sin sustanciarla. De la propia carta de despido se desprende diáfanamente que la motivación fue la de mantener un servicio público intachable y honesto. Eso es una buena motivación. Recuérdese que las leyes de personal y el principio del mérito no son conceptos cuya finalidad principal es hacerle la vida buena a los empleados, sino que su finalidad mayor es reclutar, educar y conservar buenos funcionarios y empleados para que el país tenga un buen servicio público. Las leyes de personal son un medio y no un fin en sí. La minoría de los puertorriqueños que trabaja y paga con sus contribuciones ese servicio público espera, desde luego, que el mismo sea razonablemente eficiente y honesto y en beneficio de toda la población en general.

El apelante aceptó un cargo en el Servicio Exento con sus ventajas y sus desventajas. Como en su despido no medió formulación de cargos ni prueba de ellos sino que meramente se le informó la razón del mismo él no queda incapacitado para ocupar cargo o empleo público. Hemos resuelto que los despidos sumarios hechos a funcionarios y empleados comprendidos en el Servicio Exento bajo la anterior Ley de Personal, sin que mediase formulación y prueba de cargos, no incapacitan para ocupar cargos o empleos públicos ni conllevan mancha alguna ni deshonra. Dichos cargos son de libre despido porque son de confianza o porque son de tipo normativo, Sec. 8(b) (2) de la Ley Núm. 345, 3 L.P.R.A. sec. 648(b) (2). Esa es la naturaleza del Servicio Exento. Distinta es la situación en los casos en que se formulan cargos en cuyos casos deben ventilarse y probarse mediante vista y con oportunidad de defensa del querellado. *Pastor Lozada* v. *Director Ejecutivo*, supra, pág. 933.

■ Distinto sería el caso de un empleado del Servicio por Oposición, antes, o el de un empleado de carrera, ahora, que ilegalmente y en violación de los Reglamentos y de la Ley, se colocase en el Servicio Exento, o en uno equivalente, variando así arbitrariamente su posición de una protegida por la ley a una en que quedaría a merced de la autoridad nominadora y expuesto a un despido injustificado. En este supuesto habría una violación de los derechos del empleado. *Cf. Pierson Muller I* v. *Feijoó*, (en Reconsideración) 106 D.P.R. 838, (1978), en cuyo caso alegó el peticionario ser un empleado de carrera protegido por la vigente Ley de Personal. Pero como hemos visto, esa no es la situación del caso de autos.

*En vista de lo anterior por razón de no tener la Junta de Apelaciones del Sistema de Administración de Personal jurisdicción alguna en los casos provenientes del Servicio Exento de la anterior Ley de Personal, Ley Núm. 345 antes citada, se expide el recurso, y se dictará sentencia de conformidad.*