TEXTO COMPLETO DE LA SENTENCIA
El 20 de octubre de 2005, la United Auto Workers Internacional sometió una petición ante la Comisión de Relaciones del Trabajo del Servicio Público con miras a representar a los empleados y empleadas civiles de la Guardia Nacional de Puerto Rico. El organismo militar se opuso impugnando la jurisdicción de la Comisión. Alegó que el Art. 10, inciso (10) de la Ley 45 de 25 de febrero de 1998 —que autorizó la organización de los empleados y empleadas públicos de la Rama Ejecutiva para negociar colectivamente — , excluyó a “[l]os miembros de la Policía y la Guardia Nacional de Puerto Rico”, 3 L.P.R.A., see. 1452d. Argumentó que esa exclusión se extiende a los empleados y empleadas civiles de la Guardia Nacional. El 2 de octubre de 2007, la Comisión —basada en su decisión previa de asumir jurisdicción y permitir la organización y negociación colectiva de los empleados y empleadas civiles de la Policía de Puerto Rico — , emitió “Determinación de Unidad Apropiada” donde accedió a la petición de la UAW. Esa determinación no fue elevada a la jurisdicción apelativa dentro de los términos de ley y advino final y firme.
El 12 de mayo de 2008, la Guardia Nacional sometió acción de sentencia declaratoria, interdicto preliminar *871 y permanente ante el Tribunal de Primera Instancia. Alegó que la decisión de la Comisión fuera ultra vires y, por consiguiente, nula. Después de los trámites correspondientes, el Tribunal de Primera Instancia resolvió:

“La Guardia Nacional es un componente activo del Ejército de los Estados Unidos y la defensa nacional. Sus actividades, estructura y funciones están gobernadas principalmente por ley federal. James H. Lipscomb, III, Major General v. Federal Labor Relations Authority, 333 F 3d 611 (5th Cir. 2003); New Jersey Air Nacional Guard v. FLRA, 677 F 2d 276 (3er Cir., 1982), cert. den., 459 U.S. 988 (1982).

Una agencia estatal está privada de afectar la defensa nacional. Ya desde McCullough v. Maryland, 17 U.S. (4Wheat) 316 (1819) el Tribunal Supremo de los Estados Unidos ha sostenido que los estados no pueden limitar las instituciones federales sujetándolas a intereses meramente locales. United States v. López, 514 U.S. 549, (S Ct. 1995). Estos es un imperativo de la Cláusula de Supremacía del Artículo 6, Sec. 1 de la Constitución Federal. (...)

De hecho, las consecuencias de adoptar la interpretación estatutaria de la Comisión a los efectos de que la frase “los miembros” de la Guardia Nacional se refiere a los efectivos militares (y por ende, empleados federales) de dicho cuerpo castrense, lejos de viabilizar la sindicalización de los empleados civiles de dicho entidad, destruye el concepto de negociación colectiva para todos los miembros del servicio público. Ello es así porque dicha lectura de la Ley 45 conlleva la inconstitucionalidad de la misma. Explicamos el porqué de esta conclusión.

La consecuencia práctica de esta disposición es que cualquier ley o reglamentación estatal que pretenda incidir sobre áreas reservadas exclusivamente al Gobierno federal carece de validez constitucional. Crosby v. Nat’l Foreign Trade Council, 530 U.S. 363, 372-375 (2000). Este tipo de análisis constitucional se conoce como la doctrina de ocupación del campo. (...)”.

Hemos resuelto que la Comisión no tiene jurisdicción sobre la materia para conocer y mucho menos resolver solicitudes de sindicación bajo la Ley 45 de aquellas entidades y personas excluidas de sus disposiciones, como lo es la Guardia Nacional. Por lo tanto, resulta inmeritorio el planteamiento aducido por la Comisión de cosa juzgada.
La Unión de Empleados Civiles de la Guardia Nacional (UAW Local 3246), apela y señala como errores: (1) que la jurisdicción para revisar la decisión de la Comisión es de este Tribunal de Apelaciones y no del Tribunal de Primera Instancia; (2) que el Tribunal erró al concluir que la Ley 45 excluyera a los empleados y empleadas civiles de la Guardia Nacional; y (3) que erró en su aplicación de la cláusula de supremacía. La Comisión también apeló señalando, en esencia, los mismos errores. Consolidamos los recursos. La Guardia Nacional sometió su contestación. Consideraremos los señalamientos en orden inverso.
I
Comencemos por el tercer error. En Burlington Air Exp., Inc. v. Mun. Carolina, 154 D.P.R. 588, 596 (2001), el Tribunal Supremo extrajo la esencia de la doctrina federal sobre campo ocupado. Pautó y citó:
“[E]l propio Tribunal Supremo de Estados Unidos reiteradamente ha señalado que la doctrina jurisprudencial sobre el “campo ocupado” (pre-emption) aplica solamente cuando el Congreso expresamente ocupa el campo o cuando es patentemente evidente que el Congreso tuvo la intención de excluir la legislación estatal sobre determinado asunto. Wardan Canada v. Florida Dept. of Revenue, 477 U.S. 1, 5 (1986). Lo señaló así precisamente en un caso que se originó en Puerto Rico: “As we have repeatedly stated, ‘we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress... ”. ” Puerto Rico Consumer Affairs Dept. v. Isla Petroleum, 485 U.S. 495, 500 (1988).
*872 No existe ley federal alguna que ocupe el campo en materia del derecho laboral de los empleados y empleadas civiles de la Guardia Nacional. En ausencia de una expresión “clara y manifiesta” del Congreso que ocupe ese campo, no podemos determinar que sea de la jurisdicción exclusiva del Gobierno federal. Véase Cintrón v. Díaz, 159 D.P.R. 314, 320 (2003). En su alegato responsivo, la Guardia Nacional argumenta que la Ley 45 no podía extenderse a los miembros militares de la Guardia Nacional por estar el campo ocupado, pero que en cuanto a los empleados y empleadas civiles, “el impedimento que al día de hoy existe es de rango estatutario (Ley 45) y no constitucional.” El tercer error señalado se cometió. No hay campo ocupado. Examinaremos si existe impedimento a la organización sindical de los empleados y empleadas civiles.
II
El segundo señalamiento de error nos requiere interpretar el alcance de la siguiente exclusión hecha de los empleados públicos que se benefician de la Ley 45: “los miembros de la Policía y la Guardia Nacional de Puerto Rico”. Al hacerlo estudiaremos: (1) el texto de la ley y su contexto en las leyes orgánicas de la Policía y la Guardia Nacional, (2) el historial legislativo concomitante y posterior, y (3) la consideración constitucional aplicable a la exclusión.
A. El texto legal y el contexto
No hallamos en las definiciones o en las explicaciones que acompañaron al proyecto de sindicación de los empleados y empleadas públicos, alguna que indique el porqué del lenguaje específicamente escogido para la exclusión del inciso (10). La palabra “miembro", sin embargo, está definida en la ley orgánica de la Policía: “Incluye únicamente al personal que directamente desempeña tareas encaminadas a la investigación criminal, mantener el orden público, proteger la vida y propiedades de los ciudadanos, y demás deberes similares que se imponen o que en el futuro se impongan a la Policía de Puerto Rico." 25 L.P.R.A., see. 3101, inciso (f). No existe una definición igual en el Código Militar, pero éste asume que “los miembros de las Fuerzas Militares de Puerto Rico” poseen un “orden o precedencia” que se denomina “rango". Véase 25 L.P.R.A., see. 2002, inciso (i). Ese orden o precedencia comienza por “hombres alistados”, inciso (g), que en la carrera militar ascienden en rango, y junto a los “oficiales” poseen “el carácter de funcionarios del orden público” cuando el Gobernador lo ordena. 25 L.P.R.A., see. 2079. Son esos “los miembros de las Fuerzas Militares de Puerto Rico”, a diferencia de los empleados y empleadas que no entran dentro del orden o precedencia militar.
El texto legal de la Ley 45 aquí en cuestión, como pauta general, excluye a “funcionarios y empleados” de las distintas categorías en una larga lista. Al referirse a cada categoría, siempre se refiere a “empleados” excepto cuando se refiere a los supervisores y a los miembros de la Policía y la Guardia Nacional. La propia ley define “supervisores” como personas que tienen autoridad para dirigir el trabajo o tomar medidas disciplinarias, 3 L.P. R.A., see. 1451, inciso (dd). La Ley no define “miembros". Pero define empleado: “Persona que rinde servicios a una agencia mediante nombramiento en un puesto regular de carrera o en un puesto transitorio, irregular o por jornal”. Id. inciso (n). Es decir, la Ley 45 nos refiere al tipo de servicio que los empleados o empleadas rinden a su agencia, al momento de determinar si están sujetos a la protección de la ley. Hay que recurrir, pues, al ordenamiento de personal de cada agencia al momento de establecer si la ley les cobija.
Hay una diferencia entre el trato que les da a los empleados y empleadas civiles la ley orgánica de la Policía y el Código Militar que es la ley orgánica de la Guardia Nacional. La primera faculta al Superintendente de la Policía para nombrar “personal civil” y le extiende los beneficios de las leyes de personal del Gobierno del Estado Libre Asociado, 25 L.P.R.A., see. 3104, inciso (g). El Código Militar faculta al Ayudante General de Puerto Rico a nombrar “todo funcionario o empleado estatal” y dispone que “[djichos funcionarios o empleados estarán dentro del servicio exento”. 25 L.P.R.A., see. 2059, inciso (1).
En principio, esto hubiese significado que, a diferencia de lo que ocurre con la Policía, los empleados y empleadas civiles de la Guardia Nacional no hubiesen estado cobijados por las leyes de personal del Estado *873 Libre Asociado. Pou Estape v. F.S.E., 108 D.P.R. 336, 341 (1979). Aún así, la Guardia Nacional, a partir de 1986, se consideró “administrador individual” de conformidad con “la See. 5.7 de la Ley Núm. 5 aprobada el 14 de octubre de 1975 y la Ley Núm. 62 del 23 de junio de 1969 conocida como la Ley de Personal del Servicio Público de Puerto Rico y el Código Militar de Puerto Rico, respectivamente.” Fue esa la “Base legal” identificada en el Art. 2 del “Reglamento de Personal de la Guardia Nacional de Puerto Rico”. Éste fue aprobado en 1986, de conformidad con la citada See. 5.7, por la entonces Oficina Central de Administración de Personal (OCAP). Es que las leyes de personal del Estado fueron enmendadas con el fin de convertir en “administrador individual” a una agencia que “que por ley especial estaba hasta entonces totalmente comprendida en el Servicio Exento”. Ver nota al calce 2, Fidalgo Colón v. A.D.T., 112 D.P.R. 1, 2 (1982). El citado Reglamento es el que aplica al personal civil de la Guardia Nacional.
En síntesis, el régimen de personal de la Guardia Nacional, tal cual está vigente, se compone de “los miembros de las Fuerzas Militares de Puerto Rico”, inciso (i) de 25 L.P.R.A., 2002, y los “empleados estatales de las Fuerzas Militares de Puerto Rico”, inciso (1) y (m) del Reglamento de Personal, supra. El texto del Art. 10, inciso (10) de la Ley 45, hay que interpretarlo a la luz del contexto legal, que hemos analizado. Ese contexto legal incluye una dicotomía de empleados civiles y militares en la Guardia Nacional. Los militares son los “hombres alistados” (y las mujeres) junto a los oficiales que se rigen por el Código Militar. Los civiles son los que se rigen por el Reglamento de Personal.
B. Historial del texto
Al someterse el primer proyecto para la aprobación de la Ley 45, el lenguaje de la exclusión en lo que se refiere a la Policía y la Guardia Nacional era tal cual lo hemos transcrito. Hubo voces como la de los Senadores Rubén Berrios y Antonio Fas Alzamora, que argumentaron que debió incluirse a los policías dentro del alcance de la Ley 45. En ocasiones se refirieron a los “empleados” de la Policía. La lectura de esa referencia a “empleados” ata con el argumento a favor de la organización de los policías mismos; no hace una distinción expresa entre miembros de la Policía y empleados. Pero hubo un incidente dentro del proceso que arroja luz sobre el asunto. El entonces Secretario de Justicia, Honorable José A. Fuentes Agostini, en carta al Senado de 17 de noviembre de 1997, sobre el primer proyecto circulado, propuso una enmienda:
“La Sección 4.3, página 11 del proyecto, contiene un listado de funcionarios y empleados que quedarán excluidos del derecho a afdiarse en organizaciones sindicales, entre los cuales se encuentran los miembros de la Policía y la Guardia Nacional. Considero que por la naturaleza de las funciones que llevan a cabo los funcionarios del Negociado de Investigaciones Especiales de nuestro Departamento, las mismas también deben estar excluidas. Así pues, en la página 12, entre las líneas 17 y 18 debe intercalarse lo siguiente: 12) los agentes del Negociado de Investigaciones Especiales. Además, la Sección 4.3, página 12, línea 16, hace referencia a “los Miembros de la Policía y la Guardia Nacional”. Debo suponer que no se excluyen de los beneficios de esta ley a los empleados civiles de ambos cuerpos. ” (Énfasis nuestro)
Como consecuencia de esa propuesta, se enmendó el proyecto original de forma que excluyera a “los miembros de la Policía y la Guardia Nacional de Puerto Rico y los agentes del Negociado de Investigaciones Especiales del Departamento de Justicia”. (Subrayado en la propuesta). La versión final aprobada —sin explicación registrada en los anales del proyecto — , dio más de lo que pidió el Secretario. Excluyó a “los miembros de la Policía y la Guardia Nacional de Puerto Rico y los agentes, empleados y funcionarios del Departamento de Justicia. ” (Énfasis nuestro). Está claro, de una parte, que la Legislatura quiso extender la exclusión no sólo a los agentes del NIE, sino a todos los empleados y empleadas del Departamento de Justicia. Está claro, además, que tomó en consideración la distinción entre miembros y empleados civiles de la Policía y la Guardia Nacional a la que se refirió el Secretario en su propuesta. Por eso, al decidir excluir a más personal del Departamento de Justicia, la Legislatura añadió la palabra empleados después de agentes. De la otra parte, se puede deducir también que la Legislatura halló correcta la apreciación del Secretario de que el texto original *874 excluía a los miembros de la Policía y la Guardia Nacional, pero no a los empleados y empleadas civiles.
Durante el año 2001, una comisión designada por la entonces Gobernadora, Hon. Sila Calderón, consideró eliminar la totalidad de la exclusión en el inciso (10). No hubo acuerdo sobre esa propuesta. La comisión sólo alcanzó a proponer que se permitiera la organización del personal del Departamento de Justicia. La entonces Secretaria de Justicia, Honorable Anabelle Rodríguez Rodríguez, en carta al Senado de 28 de junio de 2001, se opuso. Articuló una razón de interés público que justificaba la exclusión de todo el personal bajo su autoridad: que el Departamento de Justicia es abogado de las agencias, y que su personal “podría verse envuelto en un claro conflicto de interés de surgir un conflicto laboral”. Es la misma razón de interés público que excluye de la Ley 45 a la Rama Judicial y todo su personal.
Al final quedó intacta la exclusión en el inciso (10), a pesar de la introducción de múltiples enmiendas a otras provisiones de la Ley 45 hechas por la Ley 96 del 7 de agosto de 2001. También quedó reiterada la política legislativa. En lo que aquí respecta, excluye a los “miembros” de la Guardia Nacional y a los “agentes, empleados y funcionarios” del Departamento de Justicia. No excluye expresamente a los empleados de la Guardia Nacional que no son “miembros de las Fuerzas Militares de Puerto Rico”.
C. El contexto constitucional
Estamos en presencia de un texto de ley que excluye a categorías de empleados y empleadas de la norma general que aplica a todo el personal regular de la Rama Ejecutiva. Es una clasificación excluyente. No se trata de una clasificación sospechosa. Nuestra Constitución no incluyó a los empleados y empleadas del Estado Libre Asociado dentro del “derecho a organizarse y negociar colectivamente” que cobija a los trabajadoras y trabajadores de empresas privadas y los de corporaciones públicas. Art. II, Sec. 17, Const. E.L.A., L.P.R.A., Vol. 1, 1999, pág. 357. En López. Rivera v. E.L.A., res. el 11 de julio de 2005, 2005 JTS 107, 165 D.P.R._ (2005), el Tribunal Supremo resumió la normativa constitucional aplicable a estas clasificaciones legislativas de las cuales no se sospecha por motivos de puntual protección constitucional:
“La igual protección de las leyes se funda en el principio cardinal de "trato similar para personas similarmente situadas". Esto significa que el gobierno puede hacer clasificaciones entre las personas para cualesquiera propósitos legítimos. Sin embargo, al realizarlas tiene que observar esa norma básica. (...) El fundamento de este precepto surge de la concepción básica de que para gobernar una sociedad tan compleja y variada, en la cual existen distintos intereses individuales y grupales, y diversas relaciones sociales, es necesario establecer clasificaciones. “En otras palabras, es imposible gobernar cualquier sociedad y en especial una sociedad moderna sin instituir clasificaciones entre personas, sin construir desigualdades que favorezcan a algunos y perjudiquen a otros. ”(...) El principio constitucional de la igual protección de las leyes no exige que se dé un trato igual a todos los ciudadanos siempre. (...) El Estado puede hacer clasificaciones entre las personas sin infringir dicho principio siempre y cuando la clasificación sea razonable y con miras a la consecución o protección de un interés público legítimo. ” (Enfasis nuestro y citas omitidas)
Un incidente registrado durante la Asamblea Constituyente arroja luz sobre el interés público legítimo aplicable a este caso. Al abordarse el derecho a la organización laboral y la negociación colectiva, se discutió el discrimen entre empleadas y empleados de las agencias del Gobierno y los de corporaciones públicas que operan como negocios. El delegado, don Jaime Benitez, se preguntó: “Supongamos que pasado mañana, [la Policía] deja de estar en la Ley de Personal (...) ¿quiere decirse con esto (...) que van a tener en consecuencia de ello el derecho a la huelga, etc.?” El mismo contestó: “es un caso clarísimo, donde de la propia naturaleza de la función, es de tal carácter público, que independientemente de si está circundada del atributo adicional de servicio civil o no, su propia índole la coloca en una esfera de responsabilidad ciudadana que no puede gobernarse por estas otras disposiciones ”. Diario de Sesiones de la Convención Constituyente de Puerto Rico, Edición de 1962, Tomo 3, pág. 1618.
*875 Hallamos en esa explicación, la definición de un interés público en la voz profética de don Jaime Benitez: la propia naturaleza de la función policíaca que se encarga de la seguridad ciudadana. Notamos que se explícito allí la distinción entre la “propia índole” de la función policíaca y la del “servicio civil”. Aunque el servicio, civil sea un “atributo adicional ” de la Policía, “su propia índole ” corresponde a otra esfera de responsabilidad. Esa distinción es de plena aplicación al personal de la Guardia Nacional por “su propia índole”. Allí también hay una esfera de servicio militar, cuyos miembros participan del “carácter de funcionarios del orden público”, según el Código Militar y una esfera de servicio civil.
En la ley orgánica de la Policía, la Legislatura quiso distinguir al personal civil del Cuerpo y extenderle los beneficios de la ley de personal del Estado. En su Reglamento de Personal, la Guardia Nacional legisló ese mismo tratamiento para su personal civil estatal según se lo requirió la ley de personal del Estado. Los “miembros de la Policía y la Guardia Nacional de Puerto Rico” son los y las que ofrecen servicio policíaco y militar, respectivamente. Los empleados y empleadas civiles de ambos cuerpos no son tratados como “miembros de la Policía y la Guardia Nacional”. Tienen por ley o reglamento un tratamiento distinto como empleados y empleadas regulares del Gobierno. Son “[p]ersona[s] que rinde[n] servicios a una agencia mediante nombramiento en un puesto regular de carrera”. 3 L.P.R.A., see. 1451, inciso (n).
Estos empleados y empleadas no tienen la naturaleza de la función policíaca o militar, “de tal carácter público”. Tampoco son parte de una agencia como el Departamento de Justicia, cuya función como abogado de las agencias, les coloque en una situación de conflicto de interés en casos de conflicto laboral. En tanto en cuanto su función sea de estricto servicio civil, no se ha articulado una razón para excluirles de la Ley 45 “con miras a la consecución o protección de un interés público legítimo ”, López Rivera, supra.
Ill
Nos toca abordar por último el señalamiento sobre la jurisdicción. Se plantea que era a este Tribunal y no al Tribunal de Primera Instancia al que el correspondía la revisión de la decisión tomada.
La Ley 45, 3 L.P.R.A. see. 1451 et seq., conocida como “Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico ”, fue aprobada con el propósito de “conferirle a los empleados públicos en las agencias tradicionales del Gobierno central, a quienes no aplica la Ley de Relaciones del Trabajo de Puerto Rico, el derecho a organizarse para negociar sus condiciones de trabajo dentro de los parámetros que se establecen en esta Ley.” Exposición de Motivos de la Ley Núm. 45 de 25 de febrero de 1998, Leyes de Puerto Rico, pág. 148. La pieza legislativa les reconoció a los empleados y empleadas de la agencias de la Rama Ejecutiva el derecho a organizarse y afiliarse en organizaciones sindicales de su elección; 3 L.P.R.A. sec. 1451b; a escoger, mediante voto mayoritario, la organización que habrá de representarles ante la agencia correspondiente, 3 L.P.R.A. see. 145 lg; y a que la organización sindical que prevalezca en las elecciones, y que sea certificada como representante exclusivo de los empleados comprendidos en esa unidad apropiada, tenga la autoridad para negociar con la agencia correspondiente un convenio colectivo “en el que se discutan y acuerden disposiciones sobre salarios, beneficios marginales, términos y condiciones de empleo.” 3 L.P.R.A. see. 145 l(j). Véase A.R. P.E. v. C.U.T.E., res. el 19 de octubre de 2005, 2005 JTS 152, 165 D.P.R._(2005).
Para hacer cumplir sus disposiciones, la Ley 45 creó la Comisión de Relaciones del Trabajo del Servicio Público y le confirió facultades cuasi-legislativas y cuasi-judiciales, delimitadas en la ley. 3 L.P.R.A. sec. 1452t. La Comisión es la entidad encargada de “interpretar, aplicar y hacer cumplir las disposiciones de este capítulo en todo lo relativo a procesos de organización, certificación y descertificación de organizaciones sindicales, procedimientos relacionados con la conciliación y el arbitraje de negociaciones de convenios colectivos, procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que la Ley le haya delegado alguna actuación en particular.” 3 L.P.R.A. 1452t(a). Y en lo que en el caso ante nosotros es pertinente, se le delegó poder, más específicamente, “[pjara resolver controversias sobre la aplicación de este capítulo. ” 3 L.P.R.A. 1452t(b).
*876 La Comisión tenía plena jurisdicción para evaluar la solicitud de organización de los empleados y empleadas civiles de la Guardia Nacional al amparo de la Ley 45. Tenía facultad para interpretar el inciso (10) que aquí hemos analizado y resolver la controversia sobre su extensión. La Comisión definió la unidad apropiada conforme a su experiencia y especialidad. Lo hizo con cuidadosa atención a los únicos elementos que le sometió la Guardia Nacional como pertinentes.
Hemos visto en la “Determinación de Unidad Apropiada” un minucioso análisis de las funciones de cada puesto y clasificación de empleo para excluir empleados y empleadas que no deban estar dentro de la unidad por razones de “confidencialidad, porque ejercen supervisión o por seguridad. ” La decisión así tomada advino final y firme, al no ser traída ante este Tribunal para revisión. El Tribunal de Primera Instancia tenía jurisdicción para considerar, aún así, si la decisión tomada por la Comisión era ultra vires y, por consiguiente, nula e inexistente. Consideró que lo fuera. Erró. La Comisión tenía clara facultad para “interpretar, aplicar y hacer cumplir” la Ley 45 y “para resolver controversias” sobre su aplicación, como las de este caso. La interpretación y aplicación de la Ley 45 que hizo la Comisión fue correcta.
IV
En virtud de lo expuesto, se revoca la sentencia declaratoria y el interdicto impugnado.
Lo acordó y manda el Tribunal y lo certifica la Secretaria. La jueza Rodríguez de Oronoz emitió el voto disidente que se acompaña.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
TEXTO COMPLETO DEL VOTO DISIDENTE 2009 DTA 33
San Juan, Puerto Rico, a 22 de enero de 2009
Disiento del dictamen de la mayoría de este panel. Soy de la opinión que la determinación de la Comisión de Relaciones del Trabajo del Servicio Público advino final y firme por lo que la parte demandante-apelada no presentó ante el Tribunal de Primera Instancia una causa de acción justiciable por la cual pudiera concederse remedio alguno.
DOLORES RODRÍGUEZ DE ORONOZ
Jueza de Apelaciones