Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| WILDA JOY NIN PACHECO<br><br>Apelante<br><br><br>V.<br><br><br>DEPARTAMENTO DE JUSTICIA DE PUERTO RICO, Y OTROS<br><br>Apelados | KLAN202400867 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV08981<br><br><br>Sobre: Sentencia declaratoria |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2025.

Comparece la señora Wilda Joy Nin Pacheco (señora Nin Pacheco o Apelante) y solicita que revoquemos una *Sentencia* emitida el 26 de agosto de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante dicho dictamen, el foro primario desestimó con perjuicio su solicitud de *Sentencia Declaratoria* bajo el fundamento de falta de jurisdicción.

Tras evaluar el expediente ante nuestra consideración, confirmamos el proceder del foro recurrido. Explicamos.

**-I-**

Según surge del expediente, la señora Nin Pacheco se desempeñó como abogada litigante y luego como Fiscal Auxiliar en el Departamento de Justicia desde el 1 de septiembre de 1988. Mediante comunicación de **20 de octubre de 2020,** la Administración de los Sistemas de Retiro informó que la Apelante

---

[1] Notificada el 27 de agosto de 2024.

había acumulado un balance de aportaciones al sistema de $184,127.04 en 24 años de servicio acreditados.[2] Luego, el 5 de noviembre de 2020, la señora Nin Pacheco recibió una *Notificación de Elegibilidad Programa de Retiro Incentivado*. En dicha misiva se le informó a la Apelante que de acuerdo con el Artículo 5(a)(1) de la Ley Núm. 80 de 3 de agosto de 2020, conocida como la *Ley del Programa de Retiro Incentivado y de Justicia para Nuestros Servidores Públicos*, 3 LPRA sec. 10011 *et seq.* (Ley Núm. 80-2022), ella era elegible para participar del Programa de Retiro Incentivado por ser empelada cubierta bajo Ley Núm. 447 del 15 de mayo de 1951, según enmendada. De igual forma, se le informó que tendría diez (10) días calendario a partir de la notificación para entregar el Formulario de Elección si decidía acogerse al Programa de Retiro Incentivado. El **13 de noviembre de 2020**, la señora Nin Pacheco sometió el Formulario de Elección y así, se acogió al Programa de Retiro Incentivado.

El **29 de junio de 2022**, la Apelante le remitió una carta al entonces Gobernador, Hon. Pedro Pierluisi Urrutia, donde informaba su renuncia para acogerse al plan de retiro conforme a la Ley Núm. 80-2022, efectivo el 30 de septiembre de 2022.[3] El entonces Gobernador Pedro Pierluisi Urrutia le respondió a la señora Nin Pacheco mediante carta del 6 de julio de 2022, donde le agradeció por sus años de servicio y aceptó su renuncia por motivo de su retiro.[4] Luego de varios trámites relacionados con su retiro, el **10 de agosto de 2022** el Secretario Auxiliar de Recursos Humanos, el Lcdo. Christian A. Castro Plaza, le informó a la Apelante que su retiro no estaría cobijado bajo la Ley Núm. 80-2020. El **16 de agosto de 2022**, la señora Nin Pacheco —por conducto de su representante

---

[2] Véase apéndice de la apelante, pág. 13.
[3] Véase, apéndice de la apelante, págs. 14-15.
[4] Véase, apéndice de la apelante, pág. 16.

legal— le solicitó al entonces Secretario de Justicia, Hon. Domingo Emanuelli Hernández, su intervención en el asunto ya que la Apelante entendía que su retiro estaba cobijado por la Ley Núm. 80-2020.[5]

Mediante carta con fecha del **22 de septiembre de 2022**, el Lcdo. Christian A. Castro Plaza le informó a la Apelante que el retiro incentivado creado por la Ley Núm. 80-2020 se implementó de manera parcial.[6] Esto es, el retiro incentivado bajo la Ley Núm. 80-2020 solo les aplica a aquellos empleados clasificados como no esenciales de la Rama Ejecutiva. El Secretario Auxiliar de Recursos Humanos explicó que le correspondía a cada una de las agencias de la Rama Ejecutiva determinar cuáles empleados eran esenciales y cuáles eran no esenciales. Sobre estas clasificaciones, el Lcdo. Christian A. Castro Plaza explicó que la Ley Núm. 80-2020 no obliga a las agencias notificar a los empleados los criterios para establecer qué servicios se consideran servicios públicos esenciales. Continuó explicando que en el caso del Departamento de Justicia, los criterios que utilizó la agencia se limitaron a: 1) la clasificación de los puestos, 2) la necesidad del servicio y 3) la naturaleza de los servicios esenciales que provee la agencia. Que luego de dicho análisis, el Departamento de Justicia determinó que los puestos ocupados por profesionales del derecho como abogados, fiscales de distrito, **fiscales auxiliares en todos los niveles**, procuradores de asuntos de menores, procuradores de asuntos de familia y registradores de la propiedad debían ser clasificados como esenciales. El Lcdo. Christian A. Castro Plaza concluyó que la señora Nin Pacheco, que se desempeñaba como fiscal auxiliar, no cualificaba para acogerse al programa de retiro incentivado creado bajo la Ley Núm. 80-2020.

---

[5] Entrada Núm. 1 de SUMAC, Anejo 10.
[6] Entrada Núm. 1 de SUMAC, Anejo 11.

Según se informó, lo anterior respondió a que, el **20 de diciembre de 2021**, la Junta de Control Fiscal (Junta) presentó una demanda contra el Gobierno de Puerto Rico[7] al amparo del Título III de la Ley de Estabilidad Económica, Administración y Supervisión de Puerto Rico (PROMESA por sus siglas en inglés) en la Corte de Distrito Federal para el Distrito de Puerto Rico (Corte de Distrito).[8] En esencia, la Junta alegó que en el año 2020 la entonces Gobernadora, Hon. Wanda Vázquez Garced aprobó varias leyes que ilegalmente crearon nuevas obligaciones de deuda por concepto de pensiones sin la aprobación de la Junta, entre estas la Ley Núm. 80-2020, *supra.*

El **28 de diciembre de 2021**, la Jueza encargada de atender los asuntos al amparo de la Ley PROMESA, la Hon. Laura Taylor Swain, aprobó una *Estipulación* en la cual las partes se comprometieron a cumplir una serie de acuerdos.[9] Entre estos, se acordó que las partes buscarían implementar las disposiciones sobre retiro incentivado establecidas en la Ley Núm. 80-2020, pero *solo para ciertos empleados*. Entiéndase, empleados cuyos puestos no fueran esenciales y que, luego de su retiro, los puestos pudiesen ser eliminados. De esta forma, las partes alcanzarían unos ahorros mayores a los requeridos por el plan fiscal certificado o, en la alternativa, satisfarían cualesquiera otras métricas acordadas por las partes. Para la implementación parcial de la Ley Núm. 80-2020, el Gobierno de Puerto Rico se comprometió a proveer la descripción de los puestos que proponía eliminar y una proyección de los ahorros netos estimados que resultarían de la eliminación de dichos

---

[7] Específicamente, demandó al Hon. Pedro Pierluisi Urrutia en su capacidad oficial, la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF), al señor Luis M. Collazo Rodríguez en su capacidad oficial como Administrador y Director Ejecutivo de la Junta de Retiro del Gobierno de Puerto Rico (Junta de Retiro), al igual que al señor Juan C. Blanco Urrutia en su capacidad oficial como Director de la Oficina de Gerencia y Presupuesto (OGP).
[8] Entrada Núm. 32 de SUMAC, Anejo 4.
[9] Entrada Núm. 32 de SUMAC, Anejo 5.

puestos, tomando en consideración el costo de proveer este retiro incentivado.

De igual forma, las partes se comprometieron a aprobar las posiciones propuestas para su eliminación, los ahorros descritos anteriormente y a que los ahorros serían mayores a los requeridos por el plan fiscal certificado o, en la alternativa, que satisfacieran cualesquiera otras métricas acordadas por las partes. Finalmente, la Junta y el Gobierno de Puerto Rico acordaron que los puestos propuestos serian eliminados en el sistema del Gobierno de Puerto Rico. De esta forma, las posiciones eliminadas y cualesquiera otras posiciones similares a estas no podrán restaurarse, recrearse o crearse por las agencias y corporaciones afectadas. Así las cosas, la Corte de Distrito desestimó con perjuicio la demanda incoada por la Junta y *determinó conservar jurisdicción exclusiva para atender todos asunto relacionado a la Estipulación.*[10]

Cónsono con lo anterior, el Lcdo. Christian A. Castro Plaza señaló en su comunicado del **22 de septiembre de 2022** que la señora Nin Pacheco ocupó un puesto esencial en el Departamento de Justicia como fiscal auxiliar. Esto, sumado a que el retiro incentivado está íntimamente relacionado con el acuerdo entre la Junta y el Gobierno de Puerto Rico, llevó al Secretario Auxiliar de Recursos Humanos a concluir que la Apelante no cualificaba para acogerse al programa de retiro incentivado bajo la Ley Núm. 80-2020.

Ante este cuadro, el **13 de octubre de 2022**, la señora Nin Pacheco presentó una demanda contra el Departamento de Justicia, la Junta de Retiro (antes Administración de los Sistemas de Retiro de los Empleados del Gobierno de Puerto Rico) y la Judicatura sobre sentencia declaratoria al amparo de la Regla 59.1 de las de

---

[10] *Íd.*, pág. 5. *"The Title III Court shall retain subject matter jurisdiction to enforce this agreement"*.

Procedimiento Civil, 32 LPRA Ap. III, R. 59.1.[11] En síntesis, la Apelante alegó que cumplía con todos los requisitos de la Ley Núm. 80-2020, *supra*. Por ello, le solicitó al TPI que declarara su cualificación y acreencia sobre la pensión de retiro por virtud de la Ley 80-2020. Solicitó, además, que el TPI declarara que los codemandados tenían que cumplir con las obligaciones contenidas en el Artículo 8 (a) y (b) de la precitada ley.

El **3 de noviembre de 2022**, la codemandada Junta de Retiro compareció mediante *Moción de Desestimación*.[12] En apretada síntesis, la Junta de Retiro alegó que la demanda carecía de alegaciones en su contra ya que no aducía hechos que justificaran la concesión de un remedio ni la configuración de una causa de acción válida en Derecho. La Junta de Retiro alegó que de la demanda no se desprendía remedio alguno que la agencia codemandada pudiera conceder. Arguyó que conforme al Artículo 8 de la Ley Núm. 80-2020, *supra*, el Departamento de Justicia tenía la obligación de garantizar que la Apelante cumplía con los requisitos establecidos en el Artículo 5 de la Ley Núm. 80-2020. Añadió la Junta de Retiro que su participación se limita a orientar, preparar el Formulario de Elección y establecer mediante carta circular —en conjunto con la OGP— el procedimiento, los términos y formularios para la implementación del programa de retiro incentivado. Por otro lado, la Junta de Retiro señaló que de las propias alegaciones de la demanda surge que la agencia codemandada cumplió con sus obligaciones toda vez que orientó, creó los formularios y emitió la carta circular estableciendo el proceso. La Junta de Retiro añadió que cumplió con su deber de evaluar a los candidatos elegibles e informarle a la señora Nin Pacheco que era elegible para participar del programa de

---

[11] Entrada Núm. 1 de SUMAC.
[12] Véase, apéndice de la apelante, págs. 86-90.

conformidad con la Ley Núm. 80-2020. La Junta de Retiro concluyó que no existía una controversia real entre la agencia codemandada y la Apelante ya que cualquier determinación que el Departamento de Justicia tomó o emitió no le era atribuible a la Junta de Retiro. Por todo esto, la Junta de Retiro solicitó la desestimación del pleito en su contra.

El **10 de noviembre de 2022**, la señora Nin Pacheco presentó su *Contestación a Moción de Desestimación, Solicitud de Sentencia Sumaria Parcial y Sobre Cuestión Preliminar de Partes*.[13] En síntesis, la Apelante solicitó que se dictara sentencia sumaria a su favor y contra la Junta de Retiro ya que la agencia codemandada reconoció que el 5 de noviembre de 2020 certificó que la señora Nin Pacheco era elegible para participar del programa de retiro incentivado.

Por su parte, el codemandado Departamento de Justicia compareció mediante escrito de *Comparecencia Especial en Solicitud de Desestimación* el **19 de diciembre de 2022**.[14] En esencia, el Departamento de Justicia adujo que la señora Nin Pacheco no incluyó como parte demandada al Estado Libre Asociado de Puerto Rico (ELA), quien le suple capacidad jurídica a la agencia codemandada. En este sentido, alegó que el Departamento de Justicia no tenía capacidad jurídica para defenderse ni presentar alegaciones responsivas.

En atención a lo anterior, el **1 de febrero de 2023**, la señora Nin Pacheco presentó una *Moción Informativa y en Solicitud de Nuevos Emplazamientos* donde solicitó se expidiera el emplazamiento dirigido al ELA.[15] Posteriormente, se expidió el emplazamiento solicitado y el **16 de marzo de 2023**, la señora Nin Pacheco presentó una *Demanda Enmendada*.[16]

---

[13] Entrada Núm. 8 de SUMAC.
[14] Véase, apéndice de la apelante, págs. 73-85.
[15] Entrada Núm. 11 de SUMAC.
[16] Véase, apéndice de la apelante, págs. 1-72.

El **17 de abril de 2023**, el ELA compareció por sí y en representación del Departamento de Justicia mediante *Moción de Desestimación* y, en esencia, sustentó su solicitud de desestimación en tres argumentos: 1) el TPI no tenía jurisdicción sobre la materia, 2) la controversia era prematura y 3) la solicitud sobre sentencia declaratoria de la Apelante en realidad buscaba una opinión consultiva.[17] Primeramente, el ELA alegó que el TPI carecía de jurisdicción sobre la materia ya que la Corte de Distrito retuvo jurisdicción sobre cualquier planteamiento relacionado a la *Estipulación* habida entre la Junta y el Gobierno de Puerto Rico.

Por otro lado, el ELA alegó que si el TPI creía tener jurisdicción sobre la materia, la demanda incoada en su contra no tenía legitimidad puesto que la controversia era prematura y porque la sentencia declaratoria requería una opinión consultiva. El ELA arguyó que aún no existía un acuerdo final para la implementación parcial del retiro incentivado de forma que, dictar sentencia sobre la elegibilidad de la Apelante sería prematuro. De otra parte, señaló que la señora Nin Pacheco no le solicitó al TPI un remedio, sino que le solicitó al foro primario que interpretara si la Apelante podía acogerse a los beneficios establecidos en la Ley Núm. 80-2020, *supra.*

En respuesta, el **4 de mayo de 2023**, la señora Nin Pacheco presentó una *Moción en Oposición* en la cual se opuso a la solicitud del ELA.[18] Sobre la falta de jurisdicción sobre la materia, la Apelante alegó que la demanda incoada por la Junta el 20 de diciembre de 2021 fue un procedimiento adversativo dentro de un proceso de quiebra ante una Corte de Quiebras con jurisdicción limitada en el que la Apelante no fue ni podía ser parte. La señora Nin Pacheco arguyó que la Corte de Quiebras dejó al arbitrio de las partes la

---

[17] Entrada Núm. 32 de SUMAC.
[18] Véase, apéndice de la apelante, págs. 91-99.

determinación de la naturaleza de su puesto. Por ello, la Apelante alegó que el TPI tenía jurisdicción para determinar si ocupaba un puesto esencial. Por otro lado, la señora Nin Pacheco señaló que la controversia sí estaba madura y que su solicitud de sentencia declaratoria no constituía una opinión consultiva ya que, al momento en que presentó la demanda, ella era una pensionada a quien el ELA no le reconoció su derecho a recibir la pensión que le ofreció para inducirla a retirarse.

El **19 de mayo de 2023**, la Junta de Retiro presentó una *Moción para replicar a "Contestación a Moción de Desestimación, Solicitud de Sentencia Sumaria Parcial y sobre cuestión preliminar de partes, Oponer solicitud de Sentencia Sumaria Parcial presentada por la parte demandante, y suplementar Moción de Desestimación de la Junta de Retiro."*[19] En esta, la Junta de Retiro reiteró que su participación se limitó a orientar, preparar el Formulario de Elección y establecer mediante carta circulares junto a la OGP el procedimiento y formularios para la implementación del programa de retiro incentivado. No obstante, la Junta de Retiro aseguró que en ningún momento se allanó ni admitió que la Apelante tenía un derecho de participación en el programa bajo la Ley Núm. 80-2020. La Junta de Retiro añadió que como el marco fáctico y jurídico de la Ley Núm. 80-2022 cambió, correspondía desestimar la demanda por falta de jurisdicción sobre la materia.

Luego de varias incidencias procesales —entre estas la solicitud de la Apelante para iniciar el descubrimiento de prueba y deponer al Lcdo. Christian Castro Plaza[20]— el TPI emitió su *Sentencia* el **26 de agosto de 2024**.[21] Mediante esta, el foro primario declaró *Ha Lugar* la Moción de Desestimación del ELA y la Moción de

---

[19] Véase, apéndice de la apelante, págs. 100-118.
[20] Entrada Núm. 44 de SUMAC.
[21] Véase, apéndice de la apelante, págs. 211-221.

Desestimación de la Junta de Retiro, al igual que su Suplemento. El foro primario razonó que de acuerdo con la Estipulación del 28 de diciembre de 2021, la Corte de Distrito retuvo jurisdicción exclusiva para atender todo asunto relacionado con la misma. Por ende, eso incluía cualquier controversia relacionada con la Ley Núm. 80-2020 y los acuerdos alcanzados por las partes. De modo que, el TPI carecía de jurisdicción sobre la materia toda vez que la controversia ante su consideración constituía campo ocupado al amparo de PROMESA. Añadió el foro de instancia que, aun si tomara como ciertas las alegaciones de la señora Nin Pacheco, el foro federal invalidó la Ley Núm. 80-2020 y al así hacerlo ocupó el campo en torno a dicho asunto. Por todo lo anterior, el TPI desestimó la demanda con perjuicio.

Inconforme, la señora Nin Pacheco acudió ante esta Curia mediante el presente recurso de *Apelación* y alegó la comisión de los siguientes errores:

> *Erró el Tribunal de Primera Instancia al concluir que era evidente que de las propias alegaciones de la Solicitud de Sentencia Declaratoria procedía la defensa de falta de jurisdicción permitida por la Regla 10.2 de las de Procedimiento Civil.*
>
> *Erró el Tribunal de Primera Instancia al declarar que carecía de jurisdicción.*
>
> *Erró el Tribunal de Primera Instancia al declararse sin jurisdicción sin haber recibido evidencia sobre el curso de seguido por el Gobierno de Puerto Rico y la Junta de Control Fiscal en un pleito federal bajo la Ley PROMESA en el que sometieron una estipulación en la que se comprometieron a realizar gestiones encaminadas a implementar la Ley 80 a favor de empleados del gobierno.*
>
> *Erró el Tribunal de Primera Instancia al no permitirle a la demandante recopilar la evidencia que estaba exclusivamente bajo el poder del departamento de Justicia para demostrar que como cuestión de derecho y hechos el Tribunal General de Justicia de Puerto Rico era el Tribunal con jurisdicción sobre el asunto objeto de la demanda.*
>
> *Erró el Tribunal de Primera Instancia al ignorar la causa de acción de la demandante bajo la doctrina de actos*

*propios que le concedía un remedio equivalente a la Ley 80-2020 per que emana del Código Civil de Puerto Rico.*

El ELA y la Junta de Retiro comparecieron mediante sus respectivos escritos en oposición. Contando con la comparecencia de todas las partes, procedemos a resolver la controversia ante nuestra consideración.

**-II-**

**-A-**

El mecanismo de sentencia declaratoria provisto por la Regla 59 de las de Procedimiento Civil, 32 LPRA Ap. V, R.59, permite a un tribunal emitir un dictamen cuando los hechos alegados demuestran que existe una controversia sustancial entre partes que tienen intereses legales adversos, sin que medie lesión previa de los mismos, ello con el propósito de disipar la incertidumbre jurídica y contribuir a la paz social. Su objetivo es proveer al ciudadano un mecanismo procesal de carácter remedial mediante el cual pueda *anticiparse* a dilucidar ante los tribunales los méritos de cualquier reclamación que pueda representar un peligro potencial en su contra. J. Cuevas Segarra, Tratado de Derecho Procesal, 2da ed., Publicaciones JTS, 2011, Tomo V, pág. 1788.

El empleo de la sentencia declaratoria está limitado. La controversia no debe ser abstracta, teórica, remota, académica o especulativa. *Moscoso v. Rivera*, 76 DPR 481, 492-493 (1954). Debe ser actual y el daño que se pueda ocasionar no debe ser demasiado especulativo. *Íd.* El peso de la prueba de que existe una controversia real a ser adjudicada es del peticionario. Cuevas Segarra, op. cit., pág. 1796. La controversia debe establecer una comparación entre determinados intereses públicos y sociales que puedan quedar afectados, y los intereses privados de las partes. *Íd.* Su necesidad debe tener raíces en la realidad.

Para que una demanda de sentencia declaratoria sea justiciable, es necesario que exista "una controversia sustancial entre partes que tengan intereses legales adversos, de suficiente inmediación, madurez y realidad para que hagan aconsejable el remedio declaratorio". *Moscoso v. Rivera, supra.*

En fin, la sentencia declaratoria es un mecanismo remedial y profiláctico que permite *anticipar* la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra el promovente. *Suárez v. C.E.E. I*, 163 DPR 347, 354 (2004); *Charana v. Pueblo*, 109 DPR 641, 653-654 (1980). Constituye el medio adecuado para que los tribunales ejerzan su función de interpretar las leyes, declarando el estado de derecho vigente. *Sánchez et al. v. Srio. De Justicia et al.*, 157 DPR 360, 383-384 (2002).

**-B-**

La parte demandada puede presentar varios tipos de mociones previo a contestar la demanda incluyendo solicitudes de desestimación, para que se dicte sentencia por las alegaciones, para solicitar una exposición más definida, al igual que mociones eliminatorias. Véanse, Reglas 10.2-10.5 de Procedimiento Civil, *supra*, R. 10.2-10.5; véase, además, *Costas Elena v. Magic Sport Culinary Corp.*, 2024 TSPR 13. En cuanto a las solicitudes de desestimación, "nuestro ordenamiento procesal civil permite que una persona solicite la desestimación de una reclamación judicial que se haya presentado en su contra, cuando de las alegaciones de la demanda surja que alguna defensa afirmativa derrotará la pretensión del demandante". *Costas Elena v. Magic Sport Culinary Corp.*, *supra*; véase, además, Eagle Security Police, Inc. v. Dorado, 2023 TSPR 5, 6; *Trans-Oceaic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012). Asimismo, la Regla 10.2 de Procedimiento Civil, *supra*, establece las defensas por las cuales se puede presentar mociones

de desestimación: **(1) falta de jurisdicción sobre la materia**; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable. (Énfasis suplido).

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver los casos y las controversias que se presentan ante sí. *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394 (2022); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89 (2020). Por ello, para que un tribunal pueda adjudicar un caso, debe tener tanto jurisdicción sobre la materia así como sobre las partes litigiosas. *Cobra Acquisitions v. Mun. Yabucoa et al.*, *supra*; *Shell v. Srio. Hacienda*, 187 DPR 109 (2012). La jurisdicción sobre la materia es la capacidad que ostenta el tribunal para atender y resolver una controversia sobre un aspecto legal. *Cobra Acquisitions v. Mun. Yabucoa et al.*, *supra*; *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014). La ausencia de jurisdicción sobre la materia acarrea las siguientes consecuencias:

> (1) no es susceptible de ser subsanada;
> (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste abrogársela;
> (3) conlleva la nulidad de los dictámenes emitidos;
> (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción;
> (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso; y
> (6) puede levantarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *Beltrán Cintrón et al. v. ELA et al.*, *supra*, págs. 101-102; *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372-373 (2018); *Lozada Sánchez et al. v. JCA*, 184 DPR 898, 909 (2012); *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009); *Pagán v. Alcalde Mun. de Cataño*, 143 DPR 314, 326 (1997).

De otro modo, del tribunal carecer de jurisdicción sobre la materia, no tiene autoridad para atender un recurso, puesto que sólo tiene jurisdicción para así declararlo y desestimar el caso. *Cobra Acquisitions v. Mun. Yabucoa et al.*, *supra*, pág. 395; *Lozada Sánchez*

*et al. v. JCA, supra*; *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 355 (2003).

### -C-

Como es sabido, los tribunales de Puerto Rico pueden dilucidar y adjudicar controversias tomando como base el derecho federal. *Cintrón v. Díaz*, 159 DPR 314, 319 (2003). Ello no obstante, los tribunales estatales carecen de jurisdicción sobre ciertos asuntos federales cuando el Congreso de Estados Unidos expresamente dispone esa exclusividad jurisdiccional, o cuando es evidente la intención del Congreso de privar a los tribunales estatales de jurisdicción sobre dicho asunto federal. *Íd.* La jurisdicción federal exclusiva es un asunto en extremo excepcional. *SLG Semidey Vázquez v. ASIFAL,* 177 DPR 657, 679 (2009). Al ser un asunto en extremo excepcional, no existe una presunción de que la ley federal sustituye a la ley estatal por el solo hecho de que el Congreso de los EE. UU. reglamente un área limitadamente. *Rodríguez v. Overseas Military,* 160 DPR. 270, 282 (2003); *S.L.G. v. S.L.G.,* 150 DPR 171, 182 (2000); *Bordas & Co. v. Srio. De Agricultura*, 87 DPR 534, 552–553 (1963).

Conforme a lo anterior, la doctrina de campo ocupado se ha desarrollado para evitar conflictos regulatorios entre legislaciones federales y estatales y, para fomentar una política uniforme. *González v. Mayagüez Resort & Casino*, 176 DPR 848, 858 (2009). Dicha doctrina establece que el Congreso de EE. UU. puede ocupar el campo de un asunto federal mediante su regulación y excluir la regulación local. *Íd.*; *Rivera v. Security Nat. Life Ins. Co.*, 106 DPR 517, 523 (1977); *English v. General Electric*, 496 US 72, 78-79 (1990). De acuerdo con la doctrina de campo ocupado, la resolución de conflictos entre leyes federales y estatales debe considerar la Cláusula de Supremacía de la Constitución de Estados Unidos. Art. VI, Cl. 2, Const. EE. UU.; *SLG v. SLG, supra,* a las págs. 181-182. Al

iniciar el análisis sobre la doctrina de desplazamiento o campo ocupado, se parte de la premisa que el poder regulatorio de los estados no será supeditado por un estatuto federal, a menos que el Congreso de los Estados Unidos lo exprese de forma clara y manifiesta. *Jones v. Rath Packing Co.,* 430 US 519, 525 (1977).

Para determinar si aplica la doctrina de campo ocupado, se analizan tres criterios: 1) cuando la ley federal expresamente incluye en su texto que dicho estatuto desplaza cualquier regulación estatal; 2) cuando la ley federal implícitamente no da cabida para que una ley estatal regule el asunto correspondiente, y 3) cuando es imposible cumplir con ambas leyes simultáneamente. *Arizona v. U.S.,* 567 US 387, 399-400 (2012).

**-D-**

El 30 de junio de 2016, entró en vigor PROMESA, 48 USC sec. 2101, promulgada por el Congreso de los Estados Unidos por virtud de la Cláusula Territorial de la Constitución de los Estados Unidos. Art. IV, Sec. 3, Const. EE. UU. La Sección 4 de PROMESA establece expresamente que las provisiones contenidas en dicha ley prevalecerán sobre cualquier disposición general o específica de las leyes locales o cualquier otra reglamentación que sea incompatible con PROMESA. 48 USC sec. 2103.[22]

Con la aprobación de PROMESA, el Congreso de los Estados Unidos creó la Junta y delegó en esta el proveerle a Puerto Rico un método para alcanzar responsabilidad fiscal y acceso a los mercados capitales. 48 USC sec. 2121.[23] De manera que, la Junta tiene amplias facultades en la administración de los asuntos fiscales del

---

[22] Sec. 2103. Supremacy.
  The provisions of this Act shall prevail over any general or specific provisions of territory law, State Law, o regulation that is inconsistent with this Act.
[23] Sec. 2121. Financial Oversight and Management Board
  (a) Purpose: The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets.

Gobierno de Puerto Rico. Entre los poderes conferidos a la Junta se encuentra la facultad de impedir la ejecución o implementación de leyes incompatibles con PROMESA. De igual modo, PROMESA le confirió a la Junta poder para anular aquellas acciones legislativas y ejecutivas que sean incompatibles con el plan fiscal. 48 USC secs. 2141-2152, 2175(a).

En ese sentido, el Gobierno de Puerto Rico está impedido de adoptar, implementar o hacer cumplir cualquier estatuto, resolución, política o regla que impida o derrote los propósitos de PROMESA. 48 USC sec. 2128. Por otro lado, PROMESA dispone con meridiana claridad que cualquier controversia contra la Junta o que surja de la propia ley será dirimida ante una Corte de Distrito de los Estados Unidos. 48 USC sec. 2126(a).

Expuesta la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

**-III-**

En el presente caso, la señora Nin Pacheco acude ante nos y solicita la revocación de la *Sentencia* emitida por el TPI el 26 de agosto de 2024 para que declaremos que el foro *a quo* tiene jurisdicción sobre la materia y le ordenemos resolver si procede un remedio bajo la Ley Núm. 80-2020, el Código Civil y la doctrina de actos propios. De igual forma, nos solicita que les ordenemos a las partes codemandadas presentar sus contestaciones a la demanda. Nos solicita también que se permita y se ordene la comparecencia del Lcdo. Christian Castro Plaza a la toma de deposición. Finalmente, solicita la continuación de los procedimientos correspondientes a tenor con la Reglas de Procedimiento Civil. Luego de evaluar los hechos a la luz del derecho aplicable, concluimos que

la Sentencia apelada es correcta y como tal, debe ser confirmada.[24] Nos explicamos.

Del expediente ante nuestra consideración surge que la señora Nin Pacheco se desempeñó como fiscal auxiliar del Departamento de Justicia desde el 1 de septiembre de 1988 hasta el 30 de septiembre de 2022, fecha en que fue efectiva su renuncia por motivo de su retiro. Que la renuncia de la Apelante se debió a que el 5 de noviembre de 2020, se le notificó mediante *Notificación de Elegibilidad Programa de Retiro Incentivado* que cualificaba para los beneficios del retiro incentivado bajo la Ley Núm. 80-2020, *supra.* También surge de los hechos que la señora Nin Pacheco realizó gestiones para acogerse al retiro incentivado bajo la Ley Núm. 80-2020.

De igual forma, surge que el 20 de diciembre de 2021, la Junta presentó una demanda contra el Gobierno de Puerto Rico al amparo del Título III de PROMESA ante la Corte de Distrito por aprobar varias leyes que, según sostuvo, ilegalmente crearon nuevas obligaciones de deuda por concepto de pensiones sin la aprobación de la Junta, como la Ley Núm. 80-2020. Así las cosas, el 28 de diciembre de 2021, la Hon. Laura Taylor Swain aprobó una *Estipulación* en la cual las partes se comprometieron a implementar las disposiciones sobre retiro incentivado establecidas en la Ley Núm. 80-2020 *solo para aquellos empleados cuyos puestos no fueran esenciales y que, luego de su retiro, los puestos pudiesen ser eliminados.* Además, la Corte de Distrito retuvo jurisdicción exclusiva para atender todo asunto relacionado a la *Estipulación.*

En base a dicha *Estipulación*, el Departamento de Justicia clasificó a varios de sus empleados, incluyendo a los fiscales

---

[24] Resulta prudente recordar aquí uno de los principios de la función judicial. Los jueces debemos resolver los asuntos ante nuestra consideración conforme al derecho aplicable, aun cuando ello implique un resultado que nos provoque cierta desazón.

auxiliares en todos los niveles como empleados esenciales cuyos puestos no pueden ser eliminados. De manera que, la señora Nin Pacheco ya no cualificaba para el retiro incentivado bajo la Ley Núm. 80-2020.

El TPI determinó que carecía de jurisdicción a la materia debido a que la controversia planteada por la Apelante es campo ocupado por el foro federal al amparo de PROMESA. Razonó el TPI que luego de que el foro federal invalidara la Ley Núm. 80-2020, este ocupó el campo en torno a este asunto y privó de jurisdicción a los tribunales locales. Por todo esto, el foro primario se negó a entrar en los méritos de la controversia y desestimó la demanda con perjuicio por carecer de jurisdicción sobre la materia.

Al igual que el TPI, somos del criterio de que las cortes del Estado Libre Asociado carecemos de jurisdicción para atender el caso de autos por ser campo ocupado la materia en controversia. Primeramente, estamos conscientes de los poderes y facultades que el Congreso de los Estados Unidos le confirió a la Junta. Entre estos, el poder para anular aquellas acciones legislativas y ejecutivas que sean incompatibles con el plan fiscal. 48 USC secs. 2141-2152, 2175(a). De igual modo, debemos recalcar que PROMESA dispone con meridiana claridad que cualquier controversia contra la Junta o que surja de la propia ley *será dirimida ante una Corte de Distrito de los Estados Unidos*. 48 USC sec. 2126(a). Es evidente, que tanto el TPI como este foro apelativo carecen de jurisdicción sobre la materia.

Este Tribunal, de igual manera, está consciente de la precaria situación fiscal que atraviesa el país y por consiguiente, sus residentes. Por ende, comprendemos la posición de la señora Nin Pacheco. No obstante, el marco jurídico dentro del cual surge la controversia de autos nos conduce irremediablemente a un resultado similar al alcanzado por el TPI. Por todo lo anterior,

procede confirmar la Sentencia apelada. La anterior conclusión hace innecesario que nos expresemos sobre la causa de acción alternativa argumentada por la apelante, relativa a la doctrina de actos propios. Basta con señalar que el origen o génesis del reclamo de la apelante será siempre la Ley 80-2020, Ley sobre la cual la Corte de Distrito asumió jurisdicción y expresamente la retuvo para sí. Ello significa que los tribunales de nuestra jurisdicción están impedidos de conceder remedio alguno a la apelante, siempre que su reclamo este basado o se derive de las disposiciones de la referida Ley 80-2020 y tenga, como evidentemente lo tendría, impacto fiscal.

**-IV-**

Por los fundamentos que anteceden, se confirma la Sentencia apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones